Guy E. SPARKMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00030–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 12, 1999.

Decided May 13, 1999.

Rehearing Overruled July 20, 1999.

Guy Sparkman, Tyler, pro se.

Edward J. Marty, District Attorney's Office, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Guy E. Sparkman appeals his conviction for operating a motor vehicle with a suspended license. For the reasons stated below, we affirm the judgment of the trial court.

On April 12, 1982, Sparkman was convicted for failure to maintain financial responsibility. Again on January 12, 1995, Sparkman was convicted for a like offense. On October 19, 1995, the Texas Department of Public Safety suspended Sparkman's driver's license and registration. Sparkman requested a hearing on the suspension, but the Department told Sparkman that the suspension was automatic without a hearing. Sparkman then sent a notice of appeal of the suspension to the Department of Public Safety, pursuant to the former statute, TEX.REV.CIV. STAT. ANN. art. 6701h, § 2(b), codified effective September 1, 1995, as TEX. TRANSP. CODE ANN. § 601.401 (Vernon 1999). Sparkman did not pursue his appeal for the suspension of his license.

On December 20, 1996, Sparkman was charged by information with operating a motor vehicle while his license was sus-pended. After a jury trial in the Smith County Court at Law, he was found guilty and sentenced to ninety days in jail and fined $250.00. This appeal arises from the misdemeanor conviction for driving with a suspended license.

■ Sparkman first contends that the visiting judge who presided over the trial was not authorized to act, and thus the judgment is void. The Honorable John Bradshaw was assigned to the case after the Honorable Tom Dunn recused himself. Sparkman contends that the record does not contain the assignment order and, as a result, Judge Bradshaw was not authorized to hear the case.

■ We disagree for two reasons. The order assigning Judge Bradshaw to the case is contained in the supplemental record. The order is signed by the presiding judge of the First Judicial Region and appears valid in all respects. Also, Sparkman failed to object before trial to the assignment of Judge Bradshaw. Because he did not object before trial to the assignment, he may not object later or for the first time on appeal. *Wilson v. State,* 977 S.W.2d 379, 380 (Tex.Crim.App.1998).

■ Next, Sparkman contends that a valid judgment does not exist in the court below. He argues that the judgment is not signed by the trial judge as required by Article 42.01 of the Texas Code of Criminal Procedure. Judge Bradshaw presided over the three-day trial and orally pronounced judgment on October 9, 1997, in open court. Approximately one month later, Judge Dunn, the regularly elected judge of the court below, signed the written judgment. Sparkman contends that, because his judgment is not signed by the judge who presided over the trial, it is void.

■ A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant. TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (Vernon Supp.1999). Although Article 42.01

states that the trial judge must sign the judgment, it is not always necessary for the judge who presides over the trial to actually sign the judgment. Section 74.121 of the Texas Government Code provides:

The judges of constitutional county courts, statutory county courts, justice courts, and small claims courts in a county may transfer cases to and from the dockets of their respective courts, except that a case may not be transferred from one court to another without the consent of the judge of the court to which it is transferred and may not be transferred unless it is within the jurisdiction of the court to which it is transferred. The judges of those courts within a county may exchange benches and courtrooms with each other so that if one is absent, disabled, or disqualified, the other may hold court for him without the necessity of transferring the case. *Either judge may hear all or any part of a case pending in court and may rule and enter orders on and continue, determine, or render judgment on all or any part of the case without the necessity of transferring it to his own docket.* A judge may not sit or act in a case unless it is within the jurisdiction of his court. Each judgment and order shall be entered in the minutes of the court in which the case is pending.

TEX. GOV'T CODE ANN. § 74.121(a) (Vernon 1998) (emphasis added). This case was not transferred pursuant to Section 74.121. Judge Bradshaw, a retired judge, was assigned pursuant to TEX. GOV'T CODE ANN. § 74.056 (Vernon 1998). However, we find Section 74.121 useful in our determination of whether the duly elected judge of the court may sign the judgment in a trial over which a visiting judge presided.

■ The purpose of Section 74.056 is to establish a system by which qualified judges may be assigned to hold court when necessary to dispose of accumulated business in the region. TEX. GOV'T CODE ANN. § 74.056. Judges are assigned to serve in cases in which the regularly elected judges are not available to sit or when they need assistance. Likewise, the purpose of Sec-

tion 74.121 is to allow County Court at Law judges to transfer cases between themselves when a judge is absent, disabled, or disqualified. TEX. GOV'T CODE ANN. § 74.121. Because Section 74.056 and Section 74.121 are similar and have the same purpose, we find that a visiting judge assigned under Section 74.056 has the same authority as when a case is transferred under Section 74.121. The major distinction between the two statutes is that Section 74.121 allows a transfer of cases without an assignment order between judges in a county, and Section 74.056 allows for an assignment of a visiting judge to hear a case.

We conclude that the elected judge of the trial court in this case could sign the written judgment, pursuant to Article 42.01 of the Code of Criminal Procedure, even where the visiting judge, properly assigned to the case, presided over the trial and orally pronounced judgment in open court.

■ There is an additional problem with the judgment in this case, however. Judge Dunn, who signed the judgment, had recused himself. Once a judge recuses himself, he may not take any other action in the case. TEX.R. CIV. P. 18a(c); *Mixon v. Moye*, 860 S.W.2d 209 (Tex.App.-Texarkana 1993, orig. proceeding). Thus, in this case, Judge Dunn should not have signed the judgment. We will therefore remand this case to the trial court for reformation of the judgment by Judge Bradshaw, who presided over the trial, signing it.

■ Sparkman also contends that the complaint and information were vague and did not specify what subsection of Chapter 601 of the Texas Transportation Code he was charged with violating. Sparkman filed a motion to quash the complaint and information, asserting that he was not adequately informed of the charges against him. The trial court, after a hearing, overruled the motion to quash.

■ An accused in a criminal case is guaranteed the right to know the nature of

the charge against him. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex.Crim.App. 1988); *Smith v. State*, 895 S.W.2d 449, 453 (Tex.App.-Dallas 1995, pet. ref'd) The charging instrument itself must convey adequate notice from which the accused may prepare his defense. *State v. Carter*, 810 S.W.2d 197, 199 (Tex.Crim.App.1991).

▮▮▮ Subject to rare exceptions, an information that tracks the language of the statute is legally sufficient, and the State need not allege facts that are merely evidentiary in nature. *Smith v. State*, 895 S.W.2d at 453 (*citing DeVaughn v. State*, 749 S.W.2d at 67). A motion to quash should be granted only where the language regarding the accused's conduct is so vague or indefinite that it fails to give the accused adequate notice of the acts he allegedly committed. *DeVaughn v. State*, 749 S.W.2d at 67. In the face of a timely motion to quash, the information must allege on its face facts sufficient to show the offense was committed, and to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged. *Id.; Walker v. State*, 828 S.W.2d 485, 489–90 (Tex.App.-Dallas 1992, pet. ref'd). If a statute identifies more than one method by which it can be violated, the trial court should grant a timely motion to quash and require the State to specify the method or methods by which it intends to prove that the accused violated the statute. *See Drumm v. State*, 560 S.W.2d 944, 946–47 (Tex.Crim.App.1977). This Court reviews the trial court's denial of a motion to quash under an abuse of discretion standard. *See Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Crim.App. [Panel Op.] 1981); *Karnes v. State*, 873 S.W.2d 92, 100 (Tex.App.-Dallas 1994, no pet.).

The criminal information in Sparkman's case alleged that:

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

I, H.W. MCGOWEN Assistant Criminal District Attorney of Smith County, State of Texas here in the County Court at Law of said County present that heretofore, to-wit, on or about the 27th day of October A.D.1996 and anterior to the filing of this information, in the County of Smith and the State of Texas, one GUY E. SPARKMAN, did, then and there operate a motor vehicle upon a public highway, there situate, when the Texas Operator's License or privilege to drive of the said GUY E. SPARKMAN was suspended in accordance with Texas Transportation Code Section 601;

against the peace and dignity of the State.

Sparkman's motion to quash specifically addressed the information's failure to cite the exact provision of the Transportation Code that he violated. We find that the language of the information sufficiently tracks the statutory language of TEX. TRANSP. CODE ANN. § 601.371 (Vernon 1999).[1] That being true, the State was not required to state which provision of the Transportation Code Sparkman violated, and the trial court properly overruled his motion to quash the information. The trial court did not abuse its discretion.

▮▮▮ Next, Sparkman contends that the suspension of his driver's license was unconstitutional. Specifically he argues that TEX. TRANSP. CODE ANN. § 601.231 (Vernon 1999)[2] is unconstitutional because it auto-

---

1. TEX. TRANSP. CODE ANN. § 601.371(a) (Vernon 1999) provides:

 A person commits an offense if the person operates a motor vehicle on a highway:
 (1) during a period that a suspension of the person's driver's license or nonresident's operating privilege is in effect under this chapter; or
 (2) while the person's driver's license is expired, if the license expired during a peri-

 od of suspension imposed under this chapter.

2. TEX. TRANSP. CODE ANN. § 601.231(a) (Vernon 1999) provides:

 If a person is convicted of an offense under Section 601.191 [driving without financial responsibility] and a prior conviction of that person under that section has been reported to the department by a magistrate or the judge or clerk of a court, the depart-

matically deprives him of a property right—his driver's license—without due process. Sparkman contends that, under *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), a driver's license is a property right and the State must afford him a hearing before it revokes his license.

We do not have jurisdiction to determine this issue. A person whose driver's license is automatically suspended under Chapter 601 of the Transportation Code may appeal the suspension to the county court at law. TEX. TRANSP. CODE ANN. § 601.401 (Vernon 1999). The appeal must be filed within thirty days of the notice of the suspension, or the accused must show good cause for failure to appeal within thirty days. TEX. TRANSP. CODE ANN. § 601.402 (Vernon 1999). The suspension of the driver's license is stayed during the pendency of the appeal, and the appeal is a trial de novo with the burden on the Department of Public Safety. TEX. TRANSP. CODE ANN. §§ 601.403, 601.404 (Vernon 1999).

Because the Transportation Code provides for a separate appeal from the suspension of a driver's license, we cannot review the suspension of Sparkman's license as a part of his appeal from his conviction for driving with a suspended license. Sparkman should have pursued his appeal pursuant to Sections 601.401 *et seq.* of the Transportation Code. Because he failed to do so, we cannot review the matter in this appeal.

▇▇▇ Next, Sparkman contends that TEX. TRANSP. CODE ANN. § 601.371 is unconstitutional because it violates the Equal Protection Clause of the United States Constitution. Specifically, he argues that Section 601.371 imposes a more severe punishment for driving a vehicle while one's license is suspended than for driving a vehicle when the driver has no license at all.

▇▇▇ Generally, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Wilson v. State*, 899 S.W.2d 36, 39 (Tex.App.-Amarillo 1995, pet. ref'd). In order to successfully claim denial of equal protection, an accused must prove the existence of a class of which he is a part, and unreasonable discrimination against that class. *Harris v. State*, 913 S.W.2d 706, 710 (Tex.App.-Texarkana 1995, no pet.). In the absence of class discrimination, an otherwise evenhanded statute will survive an equal protection challenge. *Id.*

Sparkman's equal protection complaint is not one of disparate treatment, because he was treated the same as all individuals arrested for driving with a suspended license due to their failure to maintain financial responsibility. *See Smith v. State*, 898 S.W.2d 838, 846 (Tex.Crim.App.1995). Sparkman was tried and sentenced in the same manner as all criminal defendants who committed similar offenses under Section 601.371. Because he cannot show that he was a member of a class treated differently from others in the same class, this point fails.

▇▇▇ Sparkman also contends that the trial court denied him his constitutional right to compulsory process of witnesses necessary to his defense. Before trial, the State filed a motion to quash Sparkman's subpoenas of several witnesses. The State requested the trial court to quash the subpoena of the present mayor of Tyler, the past mayor of Tyler, the elected judge of the County Court at Law, the staff of the Smith County Court at Law, the district attorney, the county clerk, an attorney, and a bail bondsman. After a hearing, the trial court quashed the subpoenas.

▇▇▇ The Sixth Amendment right to compulsory process "is in plain terms the right to present a defense, the right to

---

ment shall suspend the driver's license and vehicle registrations of the person unless the person files and maintains evidence of

financial responsibility with the department until the second anniversary of the date of the subsequent conviction.

present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim.App.1998) (citing *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). The Sixth Amendment, however, does not guarantee the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman v. State*, 966 S.W.2d at 527–28. To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense. *Id.* A defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense. *Id.* Where the burden of showing materiality and favorableness is not placed on the defendant, "frivolous and annoying requests [c]ould make the trial endless and unduly burdensome on the Court and all officers thereof." *Id.* at 528 (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983)).

On the record before us, it is clear that Sparkman did not make the necessary showing. At the hearing to quash the subpoenas, he did not demonstrate how the witnesses would be material to his defense of driving with a suspended license. We find the trial court did not err in quashing the subpoenas.

Sparkman also contends that the State failed to prove beyond a reasonable doubt every allegation in the information and complaint. Specifically, he contends that the State failed to prove that his driver's license had been suspended in accordance with Chapter 601 of the Texas Transportation Code, as alleged in the information. Section 601.233 of the Transportation Code provides that when a police officer writes a citation for driving without proof of financial responsibility, the citation must warn that a second conviction for driving without proof of financial responsibility will result in the suspension of the driver's license. TEX. TRANSP. CODE ANN. § 601.233 (Vernon 1999).[3] Section 601.233 also requires the judge presiding at the trial at which a person is convicted of driving without proof of financial responsibility to warn the person that a subsequent conviction for the same offense will result in the suspension of his driver's license. *Id.* Sparkman asserts that his first citation, in 1982, for driving without proof of financial responsibility did not contain the warning, and that the judge presiding at his trial did not notify him of the consequences of a second conviction. Because

3. TEX. TRANSP. CODE ANN. § 601.233 (Vernon 1999) provides:
 (a) A citation for an offense under Section 601.191 [Operation of Motor Vehicle in Violation of Motor Vehicle Liability Insurance Requirement, Offense] issued as a result of Section 601.053 [Evidence of Financial Responsibility] must include, in type larger than other type on the citation, the following statement:
 "A second or subsequent conviction of an offense under the Texas Motor Vehicle Safety Responsibility Act will result in the suspension of your driver's license and motor vehicle registration unless you file and maintain evidence of financial responsibility with the Department of Public Safety for two years from the date of conviction. The department may waive the requirement to file evidence of financial responsibility if you file satisfactory evidence with the department showing that at the time this citation was issued, the vehicle was covered by a motor vehicle liability insurance policy or that you were otherwise exempt from the requirements to provide evidence of financial responsibility."
 (b) A judge presiding at a trial at which a person is convicted of an offense under Section 601.191 shall notify the person that the person's driver's license is subject to suspension if the person fails to provide to the department evidence of financial responsibility as required by Section 601.231.

**668** ■ 

the State failed to prove the proper warnings were given, Sparkman contends his license was not suspended in accordance with Chapter 601.

We disagree for several reasons. First, we find that Sparkman's driver's license was properly suspended under the Transportation Code. Section 601.231 provides that if a person is convicted of driving without proof of financial responsibility and a prior conviction of the same offense has been reported to the Department of Public Safety, the Department shall suspend the person's driver's license and vehicle registration. TEX. TRANSP. CODE ANN. § 601.231.[4] The State introduced evidence that Sparkman had been convicted on April 12, 1982, and again on January 12, 1995, of driving without proof of financial responsibility. Accordingly, the State proved that the Department properly suspended Sparkman's license.

Secondly, as a matter of law, Sparkman was not entitled to a warning in 1982 that a subsequent conviction of driving without proof of financial responsibility would result in the suspension of his driver's license. TEX. TRANSP. CODE ANN. § 601.233 was first enacted in 1985 as TEX.REV.CIV. STAT. ANN. art. 6701h, § 1H and later codified into the Transportation Code. See Act of May 26, 1985, 69th Leg., R.S., ch. 334, § 1, 1985 Tex. Gen. Laws 1397, amended by Act of July 19, 1987, 70th Leg., 2nd C.S., ch. 46, § 1, 1987 Tex. Gen. Laws 142–43, amended by Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 10.10, 1991 Tex. Gen. Laws 1034, codified by Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1721–22. Thus, the law in effect in 1982, did not require Sparkman to be put on notice. We do not read Section 601.231 to require all convictions used to suspend a person's driver's license to have the notice outlined in Section 601.233. The

Department of Public Safety may use a pre–1985 conviction of driving without proof of financial responsibility to suspend a person's driver's license if the conviction did not come with a warning of possible suspension of the person's driver's license. The Legislature enacted Section 601.233 merely to provide notice to all persons convicted of driving without proof of financial responsibility after 1985 that a subsequent offense will result in the suspension of their driver's license. Reading Section 601.233 otherwise would only allow the Department of Public Safety to suspend licenses for those convicted of driving without proof of financial responsibility after 1985. This would lead to an absurd result. Clearly that was not the Legislature's intent when it enacted Section 601.233.

■ Sparkman also contends that the use of his 1982 conviction for driving without proof of financial responsibility violated the constitutional prohibition against ex post facto laws. First, he contends that the application of Chapter 601 of the Transportation Code to an offense committed years before its effective date was error. He argues that by allowing the State to introduce his 1982 conviction, the trial court allowed an improper retroactive application of the Transportation Code. Secondly, he reargues that it was error to allow his 1982 conviction to prove his driver's license had been suspended, because he did not receive the notice outlined in Section 601.233.

Sparkman was not subjected to a retroactive application of the Transportation Code. He was charged with driving with a suspended license on October 27, 1996. Chapter 601 of the Transportation Code went into effect on September 1, 1995, and the offense he committed was covered un-

4. TEX. TRANSP. CODE ANN. § 601.231 (Vernon 1999) provides in relevant part:
 (a) If a person is convicted of an offense under Section 601.191 and a prior conviction of that person under that section has been reported to the department by a magistrate or the judge or clerk of a court, the department shall suspend the driver's license and vehicle registrations of the person unless the person files and maintains evidence of financial responsibility with the department until the second anniversary of the date of the subsequent conviction.

der that chapter. The State did not apply a new statute to behavior that occurred before the enactment of Chapter 601. He was convicted of an offense that occurred after Chapter 601 was in effect. Additionally, we note that Chapter 601 of the Transportation Code was a nonsubstantive codification of TEX.REV.CIV. STAT. ANN. art. 6701h. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1721–22. The requirement that a driver maintain proof of financial responsibility was in effect when Sparkman was first convicted in 1982.

We also find that the use of his 1982 conviction to prove that his license had been suspended was not an application of an ex post facto law. As noted above, the conduct for which the jury convicted him was driving with a suspended license. The use of his 1982 conviction was merely to prove his status as a person with a suspended license.

As an element of the offense of driving with a suspended license, the State was required to prove Sparkman's driver's license was suspended. The State did so by introducing evidence that the Department of Public Safety automatically suspended his driver's license after the 1995 conviction based on his prior 1982 conviction. The Texas Court of Criminal Appeals has held that, while a prior conviction may be an element of an offense, the exact date of the prior conviction is not an element. *See State v. Mason,* 980 S.W.2d 635, 640 (Tex. Crim.App.1998). The date of Sparkman's conviction is not an element of the offense of driving with a suspended license. The prior conviction is essential to prove that Sparkman had two previous convictions for driving without proof of financial responsibility and subsequently had his license suspended. Likewise, the suspension of Sparkman's driver's license is an element to prove the offense of driving with a suspended license, but the dates of his prior convictions are not essential.

To the extent Sparkman argues that the use of his 1982 conviction by the State to prove his license was suspended in accordance with Chapter 601 was error, we reiterate our holding above. Section 601.231 does not require that a driver's license suspension be based on two or more convictions for driving without proof of financial responsibility with the warning outlined in Section 601.233.

■ Sparkman also contends that the trial court erred when it denied his requested jury instructions. Specifically, he contends that the trial court did not instruct the jury to find him innocent if it found the City of Tyler established an illegal quota system for issuing traffic citations.

There is no evidence in the record that a quota system existed in the City of Tyler. As there is no evidence of such a system, there was no basis for such an instruction.

Next, Sparkman contends that the trial court failed to apply the law to the facts in the court's charge to the jury. He argues that the charge failed to inform the jury of the effective dates of the statute under which he was being prosecuted, and that the jury should find him innocent if a quota system existed.

We have addressed both of these points above and have found them to be without merit.

■ Finally, Sparkman contends that the trial court acted in a retaliatory and arbitrary manner when it issued arrest warrants and forfeited his bond. He contends that the trial court's actions were in violation of his constitutional right to due process. After Sparkman was arrested for driving with a suspended license, he posted a personal bond of $500.00 cash. At his plea hearing, Sparkman failed to appear. He was mistakenly in another courtroom. The trial court issued a capias, forfeited the $500.00 bond, and entered a judgment nisi against Sparkman. After Sparkman was arrested for his failure to appear, the trial court set his bond at $5,000.00.

Sparkman's point of error does not request any relief whatsoever. He merely states that the trial court's action in revok-

ing his bond was unreasonable. We find no error in the trial court's action, and Sparkman does not demonstrate how the trial court's action was arbitrary or malicious.

We remand this cause to the trial court for the Honorable Judge Bradshaw to sign the judgment. As reformed, the judgment will be affirmed.

BEN Z. GRANT, Justice, concurs in result only.