In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00223-CR


______________________________




LAVERN TCHEFUNCTE DURDEN, A/K/A 


TCHEFUNCTE DURDEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 08-0182X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter


Dissenting Opinion by Justice Moseley


O P I N I O N



 In his version of the circumstances leading to his arrest, Lavern Tchefuncte Durden, a/k/a,
Tchefuncte Durden, was taking a shortcut across a vacant lot on his way to mow the lawn at his
church when he encountered a wheelbarrow filled with copper wire. Thinking that a friend of his
would find a use for the wire, Durden testified that in an effort to assist a friend, he took possession
of the wire-filled wheelbarrow and continued toward the church. Durden's altruistic intentions were
thwarted, however, when he encountered a Marshall police officer on his way. 

 The policeman disbelieved Durden's story and arrested Durden, charging him with theft of
the copper wire; Durden was convicted by a jury.

 Durden now appeals, contending in a single point of error that the trial court erred by refusing
to submit a mistake-of-fact instruction in the court's written jury charge. We agree the trial court
erred, but under the requisite standard of review we conclude Durden suffered no actual harm as a
result of that error.

I. The Standard of Review for Alleged Jury Charge Error and the Relevant Penal Code
Offense


 Our review of the charge first requires us to determine whether there is error in the jury
charge. If there is error, then we next determine "[i]f the error in the charge was the subject of a
timely objection in the trial court . . . ." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984) (op. on reh'g). If the appellant raised a timely objection in the trial court to the error, then the
appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights
of the defendant." Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Almanza, 686 S.W.2d
at 171. This standard requires proof of no more than "some harm to the accused from the error." 
Almanza, 686 S.W.2d at 171. If the appellant did not raise the error at trial, then the appellant can
prevail "only if the error is so egregious and created such harm that he 'has not had a fair and
impartial trial'--in short 'egregious harm.'" Id. "In both situations the actual degree of harm must
be assayed in light of the entire jury charge, the state of the evidence, including the contested issues
and weight of the probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." Id. 

 Under our law, a person commits the offense of theft when that person "unlawfully
appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann.
§ 31.03(a) (Vernon Supp. 2008). That appropriation is unlawful if, among other things, "it is without
the owner's effective consent" or if "the property is stolen and the actor appropriates the property
knowing it was stolen by another[.]" Tex. Penal Code Ann. § 31.03(b) (Vernon Supp. 2008). 

 Our law provides the following as one of many defenses to criminal responsibility:

 (a) It is a defense to prosecution that the actor through mistake formed a
reasonable belief about a matter of fact if his mistaken belief negated the kind of
culpability required for commission of the offense.


 (b) Although an actor's mistake of fact may constitute a defense to the
offense charged, he may nevertheless be convicted of any lesser included offense of
which he would be guilty if the fact were as he believed.


Tex. Penal Code Ann. § 8.02 (Vernon 2003). This mistake-of-fact defense "is applicable only if
the actor's mistake affects his culpable mental state regarding commission of the offense charged." 
Egger v. State, 817 S.W.2d 183, 187 (Tex. App.--El Paso 1991, pet. ref'd) (citing Willis v. State, 790
S.W.2d 307, 314 (Tex. Crim. App. 1990)).

 "[A]n accused has the right to an instruction on any defensive issue raised by the evidence,
whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the
trial court may or may not think about the credibility of the defense." Hamel v. State, 916 S.W.2d
491, 493 (Tex. Crim. App. 1996); see also Allen v. State, 253 S.W.3d 260, 266 (Tex. Crim. App.
2008); Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); Sands v. State, 64 S.W.3d 488,
494 (Tex. App.--Texarkana 2001, no pet.); Pennington v. State, 54 S.W.3d 852, 856 (Tex.
App.--Fort Worth 2001, pet. ref'd). The rule is designed to ensure that the jury, not the judge, will
decide the relative credibility of the evidence. Sands, 64 S.W.3d at 494. "To be entitled to a
defensive instruction, the defensive issue raised by the evidence must be an issue that both is
established by the penal code and is applicable to the charged offense." Willis, 790 S.W.2d at
314-15 (Tex. Crim. App. 1990). The defendant's testimony may be, by itself, enough to warrant the
issuance of a requested defensive instruction. Hayes, 728 S.W.2d at 807.

 In assessing whether the trial court erred by denying a requested defensive instruction (such
as one on mistake of fact), an appellate court must examine the evidence offered in support of that
defensive issue in the light most favorable to the defense. Almanza, 686 S.W.2d at 171; Pennington,
54 S.W.3d at 856. "Even when the defendant does not testify, there may be enough evidence to
warrant a charge on a defensive issue." Pennington, 54 S.W.3d at 856 (citing Smith v. State, 676
S.W.2d 584, 585, 587 (Tex. Crim. App. 1984)). "When evidence from any source raises a defensive
issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the
issue to the jury." Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (emphasis added). 
II. The Evidence and the Trial Court's Ruling on Durden's Requested Mistake-of-Fact 
Instruction


 Durden testified in his own defense. As related above, Durden told the jury that he was on
his way to mow the grass at Galilee Baptist Church on St. Patrick's Day 2008. The path he traveled
between his home and the church was one he walked almost every morning. Part of that path took
him through a trail amidst a field. 

 On the day in question, Durden was traveling along that trail when he came across a
wheelbarrow filled with what Durden said he thought was abandoned, junk copper wire, something
which had not been there on his previous walks along the trail. (1) Durden stated he then decided to
take the wheelbarrow (along with its contents) and began pushing the wheelbarrow further down the
pathway. Soon thereafter, Durden was seen by a police officer. Durden, according to his continuing
testimony, pushed the wheelbarrow toward the officer. Durden and the officer had a discussion,
during which Durden told the officer about finding the wheelbarrow and its contents. The officer,
however, believed Durden had stolen the wire and arrested him for theft. 

 On cross-examination, Durden repeatedly denied taking the wire with intent to sell it for a
profit. Rather, Durden testified, it was his intention to give the wire to a local tree surveyor, who
commonly used similar copper wire in his tree surveying business. Durden was nevertheless forced
to admit that the field on which the wheelbarrow filled with wire had been located was not land
belonging to Durden; instead, that field was owned by a man whom Durden knew to be also a
member of his church, a man he called Deacon Yancey. 

 At the conclusion of the evidence and before the parties presented closing arguments, Durden
requested a jury instruction on mistake of fact:

 DURDEN: Judge, on mistake of fact, we would just request an instruction
in regards to that.

 As the Penal Code shows, that it is a defense to prosecution that the act,
through mistake, formed a reasonable belief about a matter of fact if his mistaken
belief negated the kind of culpability required for commission of the offense.[ (2)]

 My argument is, Judge, that he testified that he did not take the copper from
Paul Davis, that he found it, apparently, abandoned, and in his mind, thought it was
abandoned and that he just moved it a short distance thinking it was abandoned.

 And because of that, we would request mistake of fact.


The trial court denied the request, commenting, THE COURT: All right. To me, that's an inferential rebuttal. I mean, they're
either going to believe him or the other evidence.

 So that request is denied.

 Bring the jury in.


This statement by the trial court suggests that although she agreed there was some evidence that (if
believed by a jury) would negate the culpable mental state of the charged crime, the trial court further
believed that this mistake-of-fact question would be resolved by the jury during the normal process
of weighing the conflicting evidence. In other words, since the jury was instructed that "A person
commits an offense if he unlawfully appropriates property with intent to deprive the owner of the
property," it would necessarily have to disbelieve Durden's claim of mistake of fact before the jury
could determine he had an intent to deprive. Thus, the trial court seems to have believed that
submitting a mistake-of-fact instruction would have been merely an unnecessary or redundant
gesture. (3) Based on that apparent conclusion, the trial court denied Durden's request.

III. Other Appellate Mistake-of-Fact Instruction Cases

 In Willis v. State, the Texas Court of Criminal Appeals discussed a hypothetical situation in
which a defendant testified that he believed certain items he had purchased were items that had been
honestly obtained by a seller of used items. In such a situation, wrote the court, the defendant's
testimony serves to "negate an element of the offense of theft of receiving property stolen by another
(i.e., that he obtained the items knowing they were stolen)." Such evidence does not negate the entire
charged crime "(for he may still possess the items)"; instead, the accused "creates an issue of
mistaken belief as to only the culpable mental state element of theft. In such circumstances, the
defendant would be entitled to a defensive instruction of 'mistake of fact . . . .'" 790 S.W.2d at 314.

 In Sands, this Court agreed with the appellant's contention that the trial court erred by failing
to give a mistake-of-fact jury instruction. We reached this conclusion after a concise discussion of
several of the Texas Court of Criminal Appeals' then-recent decisions regarding the entitlement of
defendants to receive such instructions, and each of those cases reached the conclusion that the trial
courts had erred by not giving the requested instruction. We further wrote,

Thus, in accordance with the decisions from the Court of Criminal Appeals and the
statute being interpreted, an instruction on the mistake-of-fact defense should be
given when evidence raising the issue of whether the actor formed a reasonable belief
about a matter of fact, if his mistaken belief negated the kind of culpability required
for the commission of the offense. Even if this instruction is repetitive to the
required proof that the jury find beyond a reasonable doubt that Sands intentionally
and knowingly committed this required element of the crime, this statute as
interpreted by the Court of Criminal Appeals requires that such an instruction be
given to the jury.


64 S.W.3d at 495.

 In Bang v. State, the Thirteenth Court of Appeals held the appellant had been erroneously
denied a mistake-of-fact instruction "because appellant claimed not to know that by his conduct he
was participating in a burglary. When an accused creates an issue of mistaken belief as to the
culpable mental element of the offense, he is entitled to a defensive instruction on 'mistake of fact."
815 S.W.2d 838, 842 (Tex. App.--Corpus Christi 1991, no pet.) (citing Miller v. State, 815 S.W.2d
582, 585 (Tex. Crim. App. 1991); and referencing Hill v. State, 765 S.W.2d 794, 796-97 (Tex. Crim.
App. 1989)).

IV. The State's Argument

 The State contends Durden's mistake was one of law, not one of fact. The State frames its
argument on appeal by suggesting that Durden's only mistake in this case was "that he was
indifferent as to who that owner [of the wire] may be . . . ." This indifference, according to the State,
regarded proper ownership, which the State asserts is purely a question of law. 

 The State's argument attempts to frame the issue now before us in terms of the consequences
that extend from what it characterizes as Durden's mistake of law. The State's thesis, however,
overlooks whether Durden's testimony of mistake could have been interpreted by the jury as
presenting a fact that would negate the accused's culpable mental state. We believe it is this latter
framework that is required by Almanza. It does not matter that we on appeal might hypothetically
reinterpret the evidence as suggesting that the accused was mistaken in his interpretation of the law;
the review standard instead requires us only to inquire whether there is any evidence--when viewed
in the light most favorable to the defense--offering support to the view that due to the appellant's
claimed factual mistake, the appellant lacked the requisite culpable mental state to commit the
alleged crime. This latter framework is also consistent with our opinion in Sands, as well as the
other caselaw discussed above. 


V. Was There Evidence To Support Issuing the Instruction?

 There was some evidence in this case that suggests Durden made a mistake of fact. Durden's
own testimony (i.e., that he found the wire abandoned inside a wheelbarrow along a trail that he
walked almost every day) is at least some evidence that if believed by the jury, would negate that
element of the theft charge regarding the accused's intent to deprive the rightful owner of the
property with possession of the property. Durden's testimony amounts to some evidence that he
believed the copper wire to have been abandoned property, which (if believed) would support a jury
finding that Durden lacked the intent to deprive the true owner of such property.

 Under Willis, and consistent with our previous analysis in Sands, we conclude the applicable
law and the testimonial evidence required promulgating Durden's requested defensive instruction on
mistake of fact. The fact that the mistake-of-fact instruction requested by Durden might be viewed
as repetitive to the required proof that the jury find Durden intentionally or knowingly committed
the charged crime does not obviate the trial court's statutory duty to include that properly requested
instruction. Cf. Sands, 64 S.W.3d at 495. Nor does the view that Durden's testimony might have
been seen by the trial court or the jury as feeble, contradicted, impeached, or incredible undermine
Durden's entitlement to a defensive instruction. Cf. Pennington, 54 S.W.3d at 858. The trial court
erred.



VI. Harm Analysis

 Having concluded that Durden was entitled to a mistake-of-fact instruction, in order to
correctly apply the proper standard of review we must next determine whether the error in the charge
was the subject of a timely objection in the trial court. Almanza, 686 S.W.2d at 171. The appellate
record answers that question in the affirmative. Accordingly, the jury charge error must be evaluated
to determine whether the trial court's error was "calculated to injure the rights of the defendant." 
Tex. Code Crim. Proc. Ann. art. 36.19; Almanza, 686 S.W.2d at 171. That determination will,
however, hinge on our assay of the entire jury charge, the state of the evidence, the argument of
counsel, and any other relevant factors. See Tex. Code Crim. Proc. Ann. art. 36.19; Almanza, 686
S.W.2d at 171.

 A reasonable summation of the State's case suggests Durden was literally "caught in the act"
of stealing the wire. The State also had quite a bit of evidence that cast doubt on the veracity of
Durden's version of events. Durden was found with a flashlight in his back pocket. This fact was
important, because the wire had been stolen from Davis' business during the night and because
Durden admitted it was daylight when he claimed to have found the wire. As the State pointed out
in its closing argument, one does not normally need a flashlight during the daytime if he or she is
heading to mow the church's lawn. One observes that since Durden walked the path where he said
that the wheelbarrow was located and had not encountered it before, if the copper had been
abandoned, it had not been very long abandoned. Durden had admittedly been previously convicted
of theft. (4) There was disagreement among the witnesses regarding whether Durden actually walked
toward the police officer on the morning in question or whether Durden instead changed his direction
of travel once he caught sight of the officer. The officer's version, if believed, suggests that Durden
had evidenced guilt by trying to evade contact with the officer that morning. See, e.g., Figueroa v.
State, 250 S.W.3d 490, 503 (Tex. App.--Austin 2008 pet. ref'd), cert. denied, __ U.S. __, 129 S.Ct.
1340 (2009) (appellant's attempt to flee before his arrest was fact from which jury could have
inferred consciousness of guilt). Davis testified that Durden had worked for him until the Fall of
2007. Davis testified he noticed markings indicating the wire was dragged under his fence.

 Both the State and Durden's trial counsel spent substantial portions of their respective closing
arguments addressing whether Durden's version of events was reasonable and whether it supported
the conclusion that Durden lacked the requisite intent to steal property. At trial, there was never any
question whether Durden was in possession of the purloined copper; rather, the only truly disputed
issue was his state of mind while taking the wire into his possession and keeping it under his control. 
In fact, the issue of Durden's intent was arguably the sole contested issue during the entire trial. 

 The duty to conduct a harm analysis lies solely on the shoulders of a reviewing court; the
burden is not on the parties to demonstrate it. Warner v. State, 245 S.W.3d 458, 463-64 (Tex. Crim.
App. 2008); Johnson v. State, 43 S.W.3d 1, 4-6 (Tex. Crim. App. 2001). The question that arises
here in the context of Almanza when there is preserved charging error is, "What is meant by 'some
harm?'" That question has been answered. 

We now expressly find that, in the context of Almanza, supra, and Article 36.19,
supra, the presence of any harm, regardless of degree, which results from preserved
charging error, is sufficient to require a reversal of the conviction. Cases involving
preserved charging error will be affirmed only if no harm has occurred. See id. at
171 ("In other words, an error which has been properly preserved by objection will
call for reversal as long as the error is not harmless.").


 Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). The harm must be actual and not just
theoretical. Almanza, 686 S.W.2d at 174.

 Our review of the contested and uncontested evidence (including the varying weights of such
evidence) discussed above, the entire jury charge (which included the requirement that the jury
conclude Durden intentionally or knowingly committed the charged crime), the jury arguments for
both sides, and the parties' briefs on appeal lead us to conclude Durden suffered no actual harm as
a result of the trial court's error in denying Durden's mistake-of-fact jury instruction. As we observed
in Sands, the record here reveals--at best--theoretical harm, but it does not reveal evidence of the
actual harm required by Almanza and Arline. We find no reason to abandon the analysis and
precedent established by this Court in Sands. 

 In Sands, we analyzed a factual situation and found the trial court erred in failing to submit
a mistake-of-fact instruction, but such error was not harmful. We stated: 

 In the present case, the jury came face-to-face with making a decision of
whether Sands intentionally and knowingly possessed methamphetamine. This puts
squarely in point the question of whether Sands mistakenly believed that the contents
of the syringe contained vitamins or he intentionally and knowingly possessed
methamphetamine. In this situation, Sands was not denied the right to have the jury
consider the defense that he raised concerning a mistake-of-fact defense. Therefore,
we find that the failure to submit the requested instruction on mistake of fact was not
harmful error.


 Sands, 64 S.W.3d at 496.


 Likewise, here, the jury was instructed that in order to find Durden guilty, it must find that
Durden appropriated property "with the intent to deprive the owner of the property . . . ." As in
Sands, this requirement allowed the jury to consider whether Durden mistakenly believed that the
copper wire was abandoned or he took the property with the intention of depriving the owner of that
property. Durden had his day in court. The jury heard Durden testify. His attorney cross-examined
the State's witnesses and presented a vigorous closing argument. Ultimately, the jury disbelieved
Durden's testimony that he lacked the specific intent to commit this theft. 

 While in some instances the denial of a proper defensive instruction would cause harm by
preventing the defendant from arguing an issue, i.e., self-defense, here, Durden fully argued that he
thought the wire was abandoned and that he had no intent to deprive the owner of the property ("did
the state prove beyond a reasonable doubt that he took these wires from Paul Davis with the intent
to deprive him of his property. That's what you have to decide."). While the trial court did err by
denying the mistake-of-fact instruction, the jury's verdict inferentially resolved the issue that would
have otherwise been required via the requested instruction. It would require us to resort to mere
conjecture to conclude, on this evidentiary record, that Durden suffered any actual harm. The
standard of review to assess jury charge error requires, however, more than mere conjecture. We
conclude Durden suffered no actual harm as a result of the trial court's error.

 We affirm the trial court's judgment.

 


 Jack Carter

 Justice




DISSENTING OPINION



 As pointed out by the majority, the defense of mistake of fact is recognized and described

 in the Texas Penal Code. (5) When the evidence at trial raises it, the trial court is instructed to have
the jury charge include instructions "distinctly setting forth the law applicable to the case." (6) 

 Avoiding the redundancy of repeating the test in Almanza, (7) I am in agreement with the
majority that the trial court erred in refusing the defense's request to include an instruction on
mistake of fact. I further concur that there must only be "some harm" occasioned to a defendant by
such a preserved nonconstitutional charging error before a reversal is required. (8) My difference with
the majority lies in the definition of "some harm" as it applies to the case before us here. 

 The majority points out that the mistake-of-fact defense was present throughout the trial,
commencing at the voir dire, continuing through the evidence, and argued in summation. In fact,
Durden never contested that the wire had been stolen. He admitted that he was in possession of the
stolen copper wire and that it did not belong to him. The sole question for the jury to determine was
whether he had taken his course of action under the mistaken impression that he was justified in
taking it from the place he alleged he had found it. It is because this point was so fully covered in
all phases of the trial that the majority has determined that Durden suffered no harm when the trial
court refused his request for the inclusion of an instruction of a mistake-of-fact defense.

 Apparently, defining what is meant by "some harm" is as difficult as nailing Jell-O to a tree;
although one might think that it is firmly nailed down, it slithers off the nail. Recognizing the
elusive nature of that term, Almanza instructs that looking at the full record "may illuminate the
actual, not just theoretical, harm to the accused." Almanza, 686 S.W.2d at 174. Distinguishing
between the actual versus the theoretical harm is the balancing act which the appellate courts must
perform.

 In looking at the word "theoretical," we are met with the definition "existing only in theory."
Merriam-Webster Collegiate Dictionary 1296 (11th ed. 2003). Backing up a step, the closest-fitting definitions of "theory" are "The analysis of a set of facts in their relation to one another," 
"abstract thought," "the general or abstract principles of a body of fact," "a plausible or scientifically
acceptable general principal or body of principle," "a hypothesis assumed for the sake of argument
or investigation," or "an unproved assumption." Id. Since re-creation of the exact trial as it
happened (but ameliorating an error which has occurred) is totally impossible, theoretical analysis
is precisely what appellate courts must do in any harm analysis. We must often postulate things that
did not occur in order to posit an outcome. Accordingly, in appears that the Almanza explanation
that we are not to look at theoretical harm is not very helpful in determining whether "some harm"
exists. One comes to the conclusion after parsing the words that are used in Almanza in describing
what is to be done in review on appeal, if we ignored all theoretical harm, we could almost never
find that harm resulted, no matter how egregious the circumstances might be. 

 Rather more helpful is the discussion of what is meant by "some harm" found in Arline v.
State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986), in which the Texas Court of Criminal Appeals
stated that some harm meant any harm (emphasizing both words to reflect that they are synonyms
when determining the amount of scrutiny to be applied). 

 Applying that yardstick, we now look at Durden's entire trial. As pointed out by the majority,
the entire case presented by Durden in defense was that he was mistaken and, therefore, because of
his mistake, he did not possess the necessary mens rea to have committed the crime of theft. From
the beginning of the trial until its end, this was the thrust of the controversy. Due to its importance
and the large proportion of the trial which was consumed by it, the majority believes that the issue
of that defense was adequately covered and explained and, therefore, Durden suffered no harm. 

 For the very same reason, I believe that Durden did suffer harm. The centrality of the
question of the mistake-of-fact defense in the trial is undeniable. A jury is not nearly so precise
about words as judges and lawyers; such things as "with the intent to deprive" might not be as
concrete to a juror as to a trained legal specialist. An instruction in the charge which would have
explained the mistake-of-fact defense would have served to magnify its importance and the viability
of the defense which had been mounted. Durden could have then correctly argued on closing that
the jury must first have found that there was no mistake of fact before it went on to discuss whether
the State had met its burden of proof on each of the elements of the charged offense. He could
further have used the requested instruction to emphasize in closing argument that it was not just his
opinion that the jury could not find guilt if there had been a mistake of fact, but that the court had
instructed it precisely that mistake of fact was a valid defense. 

 When the law requires that an instruction be given, when the defendant calls that law to the
attention of the trial court (apparently while reading from the statute describing the defense itself),
and when the trial court refuses the requested-but-proper instruction, we should not look at the
potential harm with a cavalier eye, but we should rather look to see if "any" harm resulted. Although
it may be simply theoretical to attempt to crawl into the minds of the jurors to determine whether the
additional emphasis the requested instruction would have placed on Durden's sole defense to the
charge, I cannot help but believe that there was "some" harm which resulted. The question of
whether it would have tipped the scales in his favor is a question we are neither required to answer
nor is anyone now capable of answering. (9) 

 The most cogent reason to reject Durden's appeal is this Court's ruling in Sands v. State, 64
S.W.3d 488, 494 (Tex. App.--Texarkana 2001, no pet.), which should be considered precedent here. 
It is our duty to give strong adherence, when possible, to the doctrine of stare decisis when analyzing
the merits of a case due to the value which consistency of the laws provide. Our own Texas Court
of Criminal Appeals has observed that "we should take into account the interests underlying the rule
of stare decisis: Often it is better to be consistent than right." Malik v. State, 953 S.W.2d 234, 236
(Tex. Crim. App. 1997). The doctrine of stare decisis is a bulwark of Anglo-American jurisprudence 
because it serves the important purpose of ensuring "the stability of the law." Lawrence v. Texas,
539 U.S. 558, 577 (2003). On the other hand, we need to observe that "Stare decisis is not an
inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence
to the latest decision.'" Payne v. Tennessee, 501 U.S. 808 (1991). Although the majority opinion
here is well reasoned and I do not suggest that it is not rationally founded, a blind adherence to stare
decisis in all cases reminds one of Einstein's definition of insanity: doing the same thing over and
over again and expecting different results. Stare decisis is not a command to repeat the mistakes of
the past. By finding that there is no harm in this case, it places the alert and objecting defendant on
virtually the same plane as the defendant who sleeps through his objections at trial; here, the trial
court was timely alerted to the mistake-of-fact defense and the request for an instruction involving
it. In both the Sands case and in this matter, a finding that no harm resulted from refusing to submit
an instruction that was the core of the defense is tantamount to our encouraging the disregard of the
statute which directs that such an instruction be included when raised by the evidence.

 In these circumstances, since I believe that Durden suffered some harm from the error, I
would reverse. 


 Bailey C. Moseley

 Justice


Date Submitted: April 24, 2009

Date Decided: May 15, 2009


Publish 


1. A police officer had earlier testified that law enforcement officials believed this wire had
been stolen from Paul Davis. Davis confirmed that some wire was missing from his place of
business at 612 Higgins Street. Durden had been an employee of Davis until the Fall of 2007. 
Durden denied stealing the wire from Davis and repeatedly insisted he found the wire along the trail. 
Durden testifed that he daily walked up Higgins Street to get to the trail. 
2. This is an accurate description of the content of the mistake-of-fact defense as it would apply
in this case. Tex. Penal Code Ann. § 8.02(a).
3. In this belief, the trial court was allied with Chief Justice Cornelius, who expressed the same
view in a concurring opinion in Sands. Sands, 64 S.W.3d at 497. 
4. Durden admitted on direct examination that he had been previously convicted of "buying
stolen property" in cause number 06-0183X, in which he received a six-month sentence. See Tex.
R. Evid. 607, 609.
5. Tex. Penal Code Ann. § 8.02 (Vernon 2003).
6. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).
7. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).
8. "Preserved jury charge error is evaluated under Almanza's 'some harm' standard unless we
determine that the error is constitutional in nature, in which case the 'beyond a reasonable doubt
harmless' standard would apply." Williams v. State, 273 S.W.3d 200, 225 (Tex. Crim. App. 2008).
9. Had this issue been raised in a hearing on a motion for new trial, a juror would have been
prohibited from testifying "to the effect of anything on any juror's mind or emotions or mental
processes, as influencing any juror's assent to or dissent from the verdict or indictment." Tex. R.
Evid. 606(b).


unt:
1'>                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Amber
Dawn Hoselton pled guilty to indecency with a child.  A bench trial on punishment resulted in ten
years imprisonment in the Texas Department of Criminal JusticeInstitutional
Division with a recommendation that Hoselton be placed in the sex offender
rehabilitation program.  On appeal,
Hoselton argues the trial court erred in:  1) quashing her subpoena of the district
attorney; 2) failing to disqualify the entire office due to the district
attorneys prior representation of her stepfather; 3) excluding her stepfathers
testimony regarding his experience in community supervision; and 4) striking
her experts testimony for failing to comply with court orders.  We affirm. 

I.          Quashing Hoseltons
Subpoena of the District Attorney

            Hoselton
argues that the trial courts action in quashing the subpoena of district
attorney Gary Young denied her the constitutional right of compulsory
process.  A claim that the trial court
improperly quashed a subpoena is reviewed for an abuse of discretion.  Moore
v. State, 109 S.W.3d 537, 543 (Tex. App.Tyler 2001, pet. denied); Muennink v. State, 933 S.W.2d 677, 684
(Tex. App.San Antonio 1996, pet. refd).

            Criminal
defendants have a right to compulsory process for obtaining witnesses.  U.S.
Const. amend. VI; Tex. Const.
art. I, § 10.  This right is in plain
terms the right to present a defense, the right to present the defendants
version of the facts as well as the prosecutions to the jury so it may decide
where the truth lies.  Sparkman v. State, 997 S.W.2d 660, 66667
(Tex. App.Texarkana 1999, no pet.) (quoting Coleman v. State, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (finding
no error in trial courts action quashing subpoena of district attorney)).  However, the right is not absolute and does
not guarantee the right to secure the attendance and testimony of any and all
witnesses.  Id. at 667.  In order to
exercise the right of compulsory process, the defendant must make a plausible
showing to the trial court that the witness testimony would be both material
and favorable to the defense.  Coleman, 966 S.W.2d at 52728.  Where the burden of showing materiality and
favorableness is not placed on the defendant, frivolous and annoying requests
[c]ould make the trial endless and unduly burdensome on the Court and all
officers thereof.  Sparkman, 997 S.W.2d at
667 (quoting Coleman, 966 S.W.2d at
528). 

            Young
previously represented Hoseltons stepfather on indecency charges in which she
was the victim.  As a result, her stepfather
was placed on community supervision and was required to complete a sex offender
treatment program overseen by Dr. Joan Ondrovik.  At the hearing on the motion to quash,
Hoselton sought to call Young to testify in mitigation about all of the rules
and regulations concerning treatment of sexual offenders.  She explained that Young had firsthand
knowledge of all the hoops her stepfather had to go through.  The trial court decided that this type of
testimony was not relevant to Hoseltons case and that other witnesses could be
procured to testify to the general regulations persons placed in sex offender
treatment programs are required to undergo. 
The court suggested the evidence be offered through Hoseltons
designated witnesses Ondrovik or Luke Luttrell, who worked for Lamar County
Adult Community Supervision, the department which set such rules.  

            The
hearing on punishment was tried to the judge, who assured Hoseltons counsel he
was familiar with the terms and conditions of sex offender community
supervision.  A trial judge may not place
any person convicted of indecency of a child on traditional community
supervision.  Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (Vernon Supp.
2009).  The trial court may defer
adjudication of guilt and place a defendant on community supervision for this
offense only if the trial court determines that such placement is in the best
interest of the victim.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(a) (Vernon Supp. 2009).  Thus, Youngs
firsthand knowledge of all the hoops involved in sex offender community
supervision had no bearing on whether placing Hoselton on deferred adjudication
community supervision would be in the victims best interest.  The reality of the situation is this:  Hoselton had pled guilty to this offense and
was attempting to obtain a community supervision sentence; the district attorney
elected to try the case rather than recommend such a sentence to the
court.  Under these circumstances, we do
not believe the trial court abused its discretion in concluding that Youngs
testimony would not be material or beneficial to Hoselton.  

            We
find the trial court did not abuse its discretion in quashing the subpoena of
the district attorney.  Hoseltons first
point of error is overruled.    

II.        Denial
of Motion to Disqualify the District Attorneys Office 

            Hoselton also sought to disqualify
the Lamar County attorneys office from prosecution in this case, for the
reason being that we do intend to call [the stepfather] as a witness in this
case.  The motion was supported only by
the fact that Young had represented the stepfather and had particular knowledge
of Hoselton as a victim in that case.  We
review the trial courts decision in denying the disqualification for abuse of
discretion.  Landers v. State, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008).  

            Hoselton
points this Court to the Texas Disciplinary Rules of Professional Conduct and
suggests a conflict of interest exists. 
Rule 1.09(a)(3), entitled conflict of interest, states: [w]ithout prior
consent, a lawyer who personally has formerly represented a client in a matter
shall not thereafter represent another person in a matter adverse to the former
client.  Tex. Disciplinary R. Profl Conduct 1.09(a)(3).  Since Hoselton was never Youngs client, this
rule is inapplicable.[1]  Further, the Texas Court of Criminal Appeals
has held that a trial court is without legal authority to disqualify an
elected district attorney solely on the basis of a violation of the Texas
Disciplinary Rules of Professional Conduct. 
Landers, 256 S.W.3d at 306
(quoting Eidson, 793 S.W.2d at 67; In re
State ex rel. Young, 236 S.W.3d 207, 213 (Tex. Crim. App. 2007)).[2]


            The
Texas Court of Criminal Appeals has set a very high standard for the
disqualification of an elected attorney. 
A trial court may not disqualify a district attorney or his staff on
the basis of a conflict of interest that does not rise to the level of a due
process violation.  Fluellen v. State, 104 S.W.3d 152, 161 (Tex. App.Texarkana 2003,
no pet.) (citing Pirtle, 887 S.W.2d
at 927; Edwards, 793 S.W.2d at
6).  Such a violation requires actual
prejudice to the defendant, not just the threat of prejudice.  Actual prejudice may occur if:

            1.         The prosecuting attorney has previously
personally represented the defendant in a substantially related matter; and 

            2.         The prosecuting attorney obtained
confidential information by virtue of that prior representation which was used
to the defendants disadvantage.  Landers, 256 S.W.3d at 305.  

            We
cannot find that Hoselton suffered actual prejudice, so it follows that the
trial court did not abuse its discretion in denying the motion to disqualify.  Accordingly, we overrule this point of error. 

III.       Prohibiting Hoseltons
Stepfather from Testifying 

            Hoselton
attempted to call the stepfather to give a laypersons opinion as to the
program, what he had to go through in regard to the program and the affect that
it can have on a persons life.  The
court sustained the States objection to relevance of the testimony.  It emphasized were not sitting here trying
whether this sex treatment program -- sex offender program is good, bad, how its
been in the past, how its going to be in the future.  Were here to set punishment on this
defendant.  

            The
trial court is the sole arbiter on the threshold question of what constitutes
relevant evidence during the punishment phase of a trial.  Mitchell
v. State, 931 S.W.2d 950, 952 (Tex. Crim. App. 1996).  Its decision is reviewed under an abuse of
discretion standard.  Id.; Reed
v. State, 48 S.W.3d 856, 859 (Tex. App.Texarkana 2001, pet. refd).  In the context of punishment, relevant
evidence is that which helps a fact-finder tailor the sentence to the
particular offense and tailor the sentence to the particular defendant.  Rogers
v. State, 991 S.W.2d 262, 265 (Tex. Crim. App. 1999).  

            This
case is similar to that of Schultze v.
State, 177 S.W.3d 26, 41 (Tex. App.Houston [1st Dist.] 2005, pet. refd), and Schielack
v. State, 992 S.W.2d 639, 64142 (Tex. App.Houston [14th Dist.] 1999,
pet. refd).  The trial court in both
cases held that the defendant could not offer testimony from a third party
about that persons experiences in prison. 
Schultze, 177 S.W.3d at 42; Schielack, 992 S.W.2d at 642.  The
courts reasoned such information would be irrelevant since there was no
evidence the defendants experiences would be the same as the third partys.  Schultze,
177 S.W.3d at 42; Schielack, 992 S.W.2d at 642.  Similarly, there was no evidence in this case
that Hoseltons stepfathers experience in the sex offender treatment program
would be the same as her experience.  As
stated in Schultze and Schielack, we believe that the trial
courts decision to exclude this testimony was at least within the zone of
reasonable disagreement.  Schultze, 177 S.W.3d at 4243 (quoting Schielack, 992 S.W.2d at 64243).  Likewise, we do not find the trial court
abused its discretion in excluding the stepfathers testimony, which would not
serve the purpose of tailoring the sentence to Hoselton.

            We
overrule this point of error.   

IV.       Striking Defense Expert
Testimony

            When the State
discovered Hoselton intended to call Ondrovik, who was appointed by the court
as an expert, it sent Ondrovik a subpoena duces tecum seeking production of her
reports and notes.  After failure to
produce an expert report or any supporting documentation, the trial court
granted the States motion to compel compliance with a subpoena duces
tecum.  At a March 30, 2009, hearing on
the States motion to compel, the State asked the trial court to require
disclosure of Ondroviks reports prior to trial.  Later, the State requested the expert provide
underlying facts or data under Rule 705 of the Texas Rules of Evidence.  Tex.
R. Evid. 705.  Hoselton argued
that Rule 705 did not authorize such pretrial discovery on behalf of the
State.  The trial judge told Hoseltons
counsel to either turn over Ondroviks reports or keep her off the stand and
you can go hire you somebody else to testify. 
In the written order, it required Hoselton must produce the requested
document by April 15, 2009 or be precluded from calling Dr. Joann Ondrovik as a
witness in this cause.  

            Hoselton
failed to provide all of Ondroviks materials to the State on April 15.  On April 17, the State complained to the
trial court that they had not been provided. 
The trial judge warned Hoselton, If you dont have that information by
5:00 today, shes not going to testify. 
We are not playing those games. 
Do you understand?  If its not
here, it will not be admitted. 

            During
the course of the trial, Ondrovik was asked on cross-examination what medical
reports she had reviewed; she responded that she had seen some of Hoseltons
hospital reports.  The State then argued
that it was to receive everything that Dr. Ondrovik used, medical records,
whatever and moved to strike the entire testimony of Ondrovik.  Rejecting Hoseltons explanation that she had
provided all documents available at the time, the trial court struck all of
Ondroviks testimony.[3]  

            Ondroviks
testimony was aimed at convincing the trial judge to place Hoselton under
community supervision with required sex offender treatment.  Prior to the striking of her testimony, she
testified Hoselton was a very positive candidate for the program.  She stated that the sex offender treatment
program was stringent and that some people had actually chosen to go to
prison rather than comply will [sic] all of the requirements of the program.  Ondrovik ultimately testified that Hoselton ha[d]
a healthy respect for prison.  She does
not want to go to prison and that there were ways acceptable within the
treatment community to verify if [Hoselton] complie[d] with the terms and
conditions of probation.  

            Hoselton
complains that the trial courts sanction for her own failure to comply with
the courts orders were too severe.  

            A
trial courts decision on whether to allow an expert witness to testify is
reviewed for abuse of discretion.  Johnson v. State, 233 S.W.3d 109, 114
(Tex. App.Houston [14th Dist.] 2007, no pet.) (citing Stoker v. State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989)[4]
(holding trial court did not abuse discretion in failing to allow defense
expert witness to testify due to failure to comply with discovery order despite
evidence of bad faith).  A trial court
abuses its discretion when its ruling is arbitrary, unreasonable, or without
reference to any guiding rules or legal principles.  Montgomery
v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990); Johnson, 233
S.W.3d at 114.  We will uphold the trial
courts decision if it is within the zone of reasonable disagreement.  Johnson, 233 S.W.3d at 114.  

            Hoseltons
argument on appeal is that the trial courts action in striking the experts
entire testimony was improper.  To
support this contention, she cites us to the Texas Rules of Civil Procedure and
several civil cases applying those rules and argues that striking the testimony
was an excessive sanction.  See TransAmerican
Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991).  Of course, this is not a civil case and the Texas
Rules of Civil Procedure are not applicable. 
Tex. R. Civ. P. 2 (These
rules shall govern the procedure . . . in all actions of a civil nature, with
such exceptions as may be hereinafter stated.).  

            The
more basic issue in this case is whether the trial court had the authority to
order pretrial discovery of the experts reports, examination records of
Hoselton, and all documents reviewed and thereafter exclude the experts
testimony for failing to fully provide the documents to the State.  

            Article 39.14 is a
limited exception to the general rule that the State cannot obtain discovery of
the witnesses the defendant intends to call. 
Thornton v. State, 37 S.W.3d
490, 493 (Tex. App.Texarkana 2000, pet. refd).  On motion of a party, the trial court may order disclosure of the name and
address of each person the other party may use at trial to present evidence
under Rules 702, 703, and 705, Texas Rules of Evidence.  Tex.
Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2009).  Rule 705 states that an expert may testify
in terms of opinion or inference and give the experts reasons therefor without
any prior disclosure of the underlying facts or data, unless the court requires
otherwise.  Tex. R. Evid. 705. 
While it was proper to require Ondrovik to disclose the facts or data
underlying her opinion so that the trial court could determine if the data
provided a basis for the opinion and was admissible, there is no general right
by the State for pretrial discovery from the defendant.[5]  Ramirez
v. State, 815 S.W.2d 636, 651 (Tex. Crim. App. 1991); Thornton, 37 S.W.3d at 492. 
We emphasize that our opinion does not expressly or implicitly interpret
Article 39.14, which provides only for disclosure of names and addresses of experts,
as requiring pretrial discovery of medical reports, records, and other such
documentation.  But, this issue of the States
right of discovery and the concomitant authority to enforce such discovery
order was not briefed or presented on this appeal.  See
Gerron v. State, 93 S.W.3d 597 (Tex.
Crim. App. 2003).[6]
 We do not believe Hoseltons argument
regarding the Texas Rules of Civil Procedure provides any basis for this Court
to conclude the trial court erred.  




 

            Even
if we found that error was present, nonconstitutional error that does not
affect substantial rights must be disregarded. 
Tex.
R. App. P. 44.2.  Generally, a
trial judge cannot assess community supervision for a defendant adjudged guilty
of indecency with a child.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g(a)(1)(c).  However, deferred
adjudication community supervision is available only if the judge makes a
finding in open court that placing the defendant on community supervision is in
the best interest of the victim.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(a).  After noting the victims
symptoms of post-traumatic stress from Hoseltons repeated abuse, including
being burned with a lighter on his genital area, State expert Cathy Floyd
testified it would be in the best interest of the eight-year-old victim for
Hoselton to be denied community supervision. 
Hoselton failed to contest this evaluation, and instead focused her
defense on her suitability for community supervision.  Ondrovik was not involved with the victim,
and her testimony was not relevant to this necessary finding involving the
victims best interest.  Thus, even had
this Court found trial error in the exclusion of Ondroviks testimony, in 




 

this context, it did not affect
Hoseltons substantial rights and, therefore, must be disregarded.  Tex. R.
App. P. 44.2(b).  

            Consequently,
we overrule Hoseltons last point of error. 

V.        Conclusion 

            We
affirm the judgment of the trial court. 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

            

Date Submitted:          February
10, 2010

Date Decided:             March
18, 2010

 

Do Not Publish

 











[1]The
only binding authority cited by Hoselton involved situations where the district
attorney had previously represented a defendant.  Those cases do not apply.  See
generally State ex rel. Hill v.
Pirtle, 887 S.W.2d 921 (Tex. Crim. App. 1994); State ex rel. Eidson v. Edwards, 793 S.W.2d 1 (Tex. Crim. App.
1990). 





[2]The
Texas Court of Criminal Appeals tells us that even though the rules of conduct
cannot solely be the basis to disqualify the district attorney, this does not
mean that a prosecutor need not comply with the Texas Disciplinary Rules of
Conduct . . . .  Landers, 256 S.W.3d at 306 n.35.





[3]The
record reveals that the district attorneys office had received a report from
Ondrovik and the complaint was that it had not received a medical record
reviewed by Ondrovik.  Ondrovik stated
the medical record came in later and 
merely confirmed what was . . . in my report, that I already knew. 





[4]The
court later reconsidered its application of waiver or preservation in Stoker, but left the merits of the
decision intact.  Leday v. State, 983 S.W.2d 713 (Tex. Crim. App. 1998). 





[5]We
recognize that certain recently enacted statutes grant the State some right to
depose witnesses in certain instances.  See Tex.
Code Crim. Proc. Ann. arts.
39.02, 39.025 (Vernon Supp. 2009).  





[6]We
cannot decide this matter based on a point not briefed.  If Hoselton had argued that the trial court
had no authority to issue and enforce a pretrial discovery order, the State
could have responded to it.  One possible
State argument could have been that the trial court has inherent authority to
allow the State some pretrial discovery outside that authorized by statute.  See
Thornton, 37 S.W.3d at 492.  We express no opinion on that question.