# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00076-CR

## Ex parte Ashley Nicole Drake

### FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2C0501665, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## O P I N I O N

Ashley Nicole Drake appeals an order denying pretrial habeas corpus relief. The issue presented is whether the assessment of a surcharge pursuant to the driver responsibility program constitutes double jeopardy. We conclude that it does not and affirm the trial court's order.

The driver responsibility program was enacted by the legislature in 2003. Act of June 2, 2003, 78th Leg., R.S., ch. 1325, § 10.01, 2003 Tex. Gen. Laws 4884, 4942 (codified at Tex. Transp. Code Ann. §§ 708.001-.156 (West Supp. 2006)). Under the program, the Texas Department of Public Safety assesses an annual surcharge on the driver's licenses of persons convicted of certain driving-related offenses during the preceding thirty-six month period. Tex. Transp. Code Ann. §§ 708.053-.054, 708.102-.104 (West Supp. 2006). The amount of the surcharge varies depending on the offense; the surcharge for driving without financial responsibility is $250 per year. *Id*. § 708.103. Failure to pay the surcharge results in the automatic suspension of the driver's license

until the surcharge is paid. *Id*. § 708.152. At least half the money collected pursuant to the program is deposited in a designated treasury account to fund trauma facilities, county and regional emergency medical services, and trauma care systems. Tex. Health & Safety Code Ann. §§ 780.002-.004 (West Supp. 2006). The remainder goes to the general revenue fund or to the Texas mobility fund. *Id*. § 780.002.

The relevant facts are undisputed. In November 2003, Drake was convicted in municipal court for failing to maintain financial responsibility and paid a fine. In October 2004, the department of public safety notified Drake that the surcharge imposed under the driver responsibility program was due and that her driver's license would be suspended if she did not pay it within thirty days. *See* Tex. Transp. Code Ann. § 708.151. Drake did not pay the surcharge, and her driver's license was automatically suspended in December 2004. *See id*. § 708.152. In February 2005, Drake was arrested for driving while her license was suspended (DWLS), and her prosecution for this offense is pending in the court below. Drake's license suspension was lifted in August 2005 after she belatedly paid the 2004 surcharge. The record reflects that Drake also paid the surcharge assessed in October 2005.

Drake filed her habeas corpus petition in the county court at law on December 14, 2005. The petition alleged that the surcharge imposed under the driver responsibility program constituted a second punishment for her failure to maintain financial responsibility and therefore violated the Texas Constitution's guarantee against double jeopardy.[1] *See* Tex. Const. art. I, § 14.

---

[1] The petition also challenged the surcharge on due process and equal protection grounds, but Drake did not pursue these contentions below.

Drake asked the court to declare the driver responsibility program unconstitutional, order the reinstatement of her driver's license and the repayment of any money paid as a surcharge, and prohibit further enforcement of the surcharge program. Following a hearing at which the court heard the arguments of counsel, all relief was denied. This appeal followed.

The State urges that Drake's petition does not present a cognizable claim. The writ of habeas corpus is an extraordinary writ that should not be entertained when there is an adequate remedy by appeal. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001). In addition, the habeas corpus petitioner must be unlawfully restrained to be entitled to relief. *Id*. Drake is restrained within the meaning of the code of criminal procedure by virtue of the pending DWLS information. *See id*. We must decide if Drake is permitted to bring her claim through a pretrial habeas corpus petition ancillary to the DWLS prosecution.

The State contends that Drake should have raised her constitutional claim in the municipal court during her trial for failing to maintain financial responsibility and, if necessary, pursued the issue on appeal from that conviction. But the surcharge was not imposed by the municipal court at the time of Drake's trial. Instead, the surcharge was assessed by the department of public safety eleven months after the municipal court trial ended. Drake was in no position to challenge the surcharge in the municipal court. Moreover, the driver responsibility program provides for the assessment of the surcharge without a prior hearing and without any subsequent review. Tex. Transp. Code Ann. §§ 708.151, .152. Drake does not appear to have had an opportunity to challenge the surcharge in any previous proceeding.

3

A criminal defendant may use pretrial habeas corpus to challenge the facial constitutionality of the penal statute on which her prosecution is based. *Ex parte Mattox*, 683 S.W.2d 93, 96 (Tex. App.—Austin 1984), *aff'd*, 685 S.W.2d 53 (Tex. Crim. App. 1985). Although Drake is not challenging the constitutionality of the DWLS statute itself, she is challenging the constitutionality of the statutory scheme of which her DWLS prosecution is a part. License suspension is the enforcement mechanism employed by the driver responsibility program, and Drake's license was suspended pursuant to the program. If, as Drake contends, the surcharge assessed under the program was facially unconstitutional, the taint of that unconstitutionality attaches to the suspension of Drake's license and the pending DWLS prosecution. Drake's habeas corpus petition calls into question the county court at law's authority to proceed with the DWLS prosecution and, if resolved in Drake's favor, would result in her immediate release. *See Weise*, 55 S.W.3d at 619. We conclude that Drake's petition raises a cognizable claim.

Drake bases her double jeopardy claim solely on the Texas Constitution. *See* Tex. Const. art. I, § 14. With respect to multiple punishments, however, the Texas Constitution's guarantee against double jeopardy does not afford any greater protection than the Fifth Amendment. *Washington v. State*, 946 S.W.2d 912, 913-14 (Tex. App.—Austin 1997, pet. ref'd). Drake does not argue otherwise and, in fact, relies on opinions construing the Fifth Amendment. We will do the same.

When confronted with an attack on the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden rests on the person who challenges the

statute to establish its unconstitutionality. *Id.* Because the resolution of Drake's contention requires the application of law to undisputed facts, we conduct a de novo review. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Double jeopardy principles protect against the imposition of multiple criminal punishments for the same offense. *Hudson v. United States*, 522 U.S. 93, 99 (1997); *Ex parte Ward*, 964 S.W.2d 617, 620 (Tex. Crim. App. 1998). Thus, the question is not whether the surcharge on Drake's license was a penalty ascribable to her conviction for driving without financial responsibility, which it clearly was, but whether the surcharge was a civil or a criminal penalty for double jeopardy purposes. We apply a two-part test:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference of one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

*Hudson*, 522 U.S. at 99 (quotation marks and citations omitted).

In her brief to this Court, as in her petition below, Drake does not analyze the driver responsibility program in the manner described above. Instead, she simply quotes a colloquy between members of the Texas House of Representatives during floor debate on the bill that enacted the program. The members were debating whether the proposed surcharges were taxes. Representatives Thompson and Noriega pressed Representative Delisi, a sponsor of the bill, to

5

concede that they were. Representative Delisi, however, insisted that a surcharge under the program was not a "tax," but a "penalty." At one point, she described the proposed surcharges as "enhance[d] penalties." Drake concludes from this that the sponsor of the bill clearly intended the surcharges to be additional punishments for persons already convicted of the covered offenses.

We find Drake's reliance on Representative Delisi's statements unpersuasive for two reasons. First, when interpreting a statute, we seek to discern the *collective* intent of the legislature. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). To do this, we focus on the text of the statute because it is the only definitive evidence of what the legislators had in mind when the statute was enacted into law. *Id*. Second, it is not sufficient that a surcharge can be viewed as a penalty for the underlying traffic offense for which it is imposed. Drake's double jeopardy argument requires a showing that the surcharge is a criminal punishment. We do not find Representative Delisi's remarks to be dispositive of this issue.

We find nothing in the statutory language to indicate that the surcharges imposed under the driver responsibility program were intended as criminal punishments. A license to drive an automobile on the streets is a privilege subject to reasonable regulations. *Coyle v. State*, 775 S.W.2d 843, 846 (Tex. App.—Dallas 1989, no pet.). Under the driver responsibility program, drivers who abuse this privilege by committing traffic offenses are assessed a surcharge used largely to finance emergency medical services and facilities—services and facilities that often serve the victims of traffic accidents. Monetary penalties have long been recognized as enforceable in civil proceedings and are not historically viewed as punishment. *Hudson*, 522 U.S. at 104. We conclude

6

that the surcharges imposed by the driver responsibility program were intended by the legislature to be civil penalties.

The question remains whether the surcharges are so punitive in their purpose or effect as to make them criminal penalties regardless of the legislature's intent. Among the factors we must consider are whether the surcharges: (1) involve an affirmative disability or restraint; (2) have historically been regarded as punishment; (3) come into play only on a finding of scienter; (4) promote the traditional aims of punishment—retribution and deterrence; (5) apply to behavior that is already a crime; (6) have a rational alternative purpose other than punishment; (7) are excessive in relation to this alternative purpose. *Id*. at 99-100; *Rodriguez v. State*, 93 S.W.3d 60, 68 (Tex. Crim. App. 2002). Only the "clearest proof" will suffice to override the legislative intent and transform a civil penalty into a criminal penalty. *Hudson*, 522 U.S. at 100; *Rodriguez*, 93 S.W.3d at 67; *Ward*, 964 S.W.2d at 620.

A surcharge is imposed under the driver responsibility program following a conviction for certain traffic offenses and obviously has a punitive effect. But a surcharge does not constitute a disability or restraint and, as previously noted, a monetary penalty is not historically viewed as punishment. *Hudson*, 522 U.S. at 104. There is no scienter requirement in the program. Although the threat of a surcharge on one's driver's license may act as a deterrent to traffic violations, the mere presence of this purpose is insufficient to render the sanction criminal because such deterrence serves civil as well as criminal goals. *See id*. at 105. The surcharges not only raise money for emergency medical facilities, but may reduce the load placed on such facilities by deterring the irresponsible driving that can result in automobile accidents. The surcharges, while

7

certainly more than nominal, are not so large as to be considered excessive in relation to their intended purpose. On balance, we find no clear proof that the surcharges are so punitive in their purpose or effect as to make them criminal penalties.

The surcharge assessed on Drake's driver's license following her conviction and fine for driving without financial responsibility was not a criminal punishment in violation of the double jeopardy guarantee against multiple punishments for the same offense, and the suspension of her driver's license for failing to pay the surcharge was not constitutionally tainted. Drake's constitutional challenge to her pending prosecution for driving while her license was suspended is without merit.

The trial court's order denying relief is affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: November 15, 2006

Publish