

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00110-CR

_____

MICHAEL EARITT WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 60286

Before Morriss, C.J., Carter and Moseley, JJ.
Order by Chief Justice Morriss
Dissent by Justice Moseley

ORDER

After Michael Earitt White was convicted of driving while his license was suspended, the trial court held indigency hearings to determine whether White was entitled to a free record and an appointed lawyer on appeal. The sole direct testimony as to White's indigency came from White. The State's only evidence that attempted to rebut White's evidence was proof that, on two prior occasions, White posted bonds of $10,000.00 and $1,000.00. The trial court ruled that White was not indigent and was, thus, not entitled to have (1) court-appointed counsel to represent him or (2) a free record provided on appeal. As the State did not effectively rebut White's evidence of indigency, we conclude that it was error to deny White a free record and an appointed attorney on appeal.

"Indigency determinations are made at the time the issue is raised and are decided on a case-by-case basis." *McFatridge v. State*, 309 S.W.3d 1, 5 (Tex. Crim. App. 2010). In our review of this matter, we use the following two-step process set forth in *McFatridge*:

> First, the defendant must make a *prima facie* showing of indigency. Once the defendant satisfies this initial burden of production, the burden then shifts to the State to show that the defendant is not, in fact, indigent. This means, essentially, that unless there is some basis in the record to find the defendant's *prima facie* showing to be inaccurate or untrue, the trial court should accept it as sufficient to find him indigent. After a defendant establishes a *prima facie* showing of indigency, "an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination." . . . A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having used this two-step process, "reasonably" believed the defendant was not indigent.

*Id.* at 6 (citations omitted).

2

"Determining indigency for purposes of appointing counsel and indigency for purposes of obtaining a free record are discrete inquiries, but the factors to be considered are the same."[1] *Id.* at 5–6. "Relevant to both indigency determinations are 'the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant.'" *Id.* at 6 (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(m) (West Supp. 2013)). "The court . . . may not consider whether the defendant has posted or is capable of posting bail, except to the extent that it reflects the defendant's financial circumstances as measured by the considerations listed in this subsection." TEX. CODE CRIM. PROC. ANN. art. 26.04(m); *Whitehead v. State*, 130 S.W.3d 866, 875 (Tex. Crim. App. 2004).

The indigency hearings for purposes of appeal[2] were held June 27, 2013, and January 2, 2014. At the first hearing, White testified that he worked at Texas Pride Welding and that, although his pay varied, he generally made anywhere from $250.00 to $325.00 per week. White testified that he had no bank account and no other assets or sources of income. From this testimony, the trial court determined that White earned $1,300.00 per month.

White next testified about his expenses. White lived with his sister and paid no rent, spent $400.00 per month on groceries, and $480.00 per month to feed six horses he owned. Because White's driver's license was suspended, he paid friends $240.00 in gasoline per week to

---

[1]A defendant can be found indigent for one purpose without being found indigent for the other. *Id.* at 6.

[2]In a letter dated October 30, 2013, White informed this Court that he "was found indigent before this trial," and that, "[t]wo weeks later, [he] was found to be not indigent using the same information presented."

secure transportation.[3]  White also had two vehicles in his possession that he had financed.  The terms of his loans required him to maintain insurance on both vehicles, which cost him $180.00 per month.  Thus, White testified that his expenses equaled the amount he earned per month.  Additionally, at the January 2, 2014, hearing, White testified that his circumstances had remained the same other than the fact that he had not worked in two weeks and was paying his bondsman the added expense of $100.00 per week.

White also valued the property in his possession.  White testified that he did not own the vehicles "free and clear."  According to White's guess, one vehicle, which the "the tag office" determined was worth $1,500.00, was only $800.00, and the other vehicle was worth only $200.00 because it was inoperable.  There was no evidence which showed how much money was still owed by White on the loans.  When asked how much his horses were worth, White replied, "Right now, nothing.  Horses are cheap now."

The State presented no evidence to dispute White's evidence as to his income, expenses, or property valuation.[4]  Instead, the State showed that White posted a $10,000.00 surety appellate bond on the same date of his conviction, was again arrested on another charge for driving while license suspended, and immediately posted a $1,000.00 surety bond following the new arrest.

---

[3]White's employer supplied him with a truck and paid for gasoline used in that truck.

[4]An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting evidence for the first time on appeal.  *See McFatridge*, 309 S.W.3d at 6; *Whitehead*, 130 S.W.3d at 872.  The State has attached documents to its appellate brief which were not submitted to the trial court and are not included in the appellate record.  They were disregarded.

The trial court recited the figures included in White's testimony in its findings of fact and pointed to the amount of the bonds that White managed to post to secure his release. Referring to the form White filled out to obtain court-appointed counsel, the court found that White was "not totally honest and open about what assets [he] had and what income [he] had" and concluded that White was not a credible person. The trial court found that White was not indigent.

"A defendant is indigent for purposes of the appointment of appellate counsel if he is 'not financially able to employ counsel.'" *McFatridge*, 309 S.W.3d at 5 (quoting TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2013)). Each county has guidelines and financial standards that it applies to determine whether a defendant is indigent for purposes of appointing counsel. TEX. CODE CRIM. PROC. ANN. art. 26.04(l) (West Supp. 2013); *see McFatridge*, 309 S.W.3d at 5.

The Lamar County Indigence Determination Standards (the Standards) list several factors that the trial court must consider in determining "if the accused is unable to retain private counsel without substantial hardship to the accused or the accused's dependents." LAMAR DISTRICT COURT & COUNTY COURT PLAN, Indigence Determination Standards, adopted October 8, 2010, *available at* http://tidc.tamu.edu/IDPlan/ViewPlan.aspx?PlanID=94. After reviewing the Standards and the record of the indigency hearings, we find that White made a prima facie case of indigence, the State failed to meet its burden to show that White was not indigent, and the trial court's findings and bases for such findings do not line up with the applicable authorities.

The evidence from the January 2, 2014, hearing established that White's monthly expenses exceeded his income by at least $100.00. White testified that, though he had two cars

5

in his possession, he was paying a note on each vehicle. White estimated that one car, which was inoperable, was worth an estimated $200.00, and that the other car had been valued by the "tag office" at $1,500.00. No testimony clarified the amount of the loan payments on the vehicles. White testified that he had no other assets. Although White owned six horses, White's uncontested testimony suggested that the horses were not worth much. Based on these facts, we find that White made a prima facie case of indigence.

The State presented no evidence contesting White's figures. Instead, the State presented and the trial court considered the amount of the bonds White posted to secure his release from confinement. However, the Standards prohibit the consideration of resources available to friends or relatives of the accused in determining whether the accused is indigent. *Id.* This is because the resources of friends and family are not relevant when such persons are not legally bound to pay for the defendant's appellate expenses. *Snoke v. State*, 780 S.W.2d 210, 213 (Tex. Crim. App. 1989). There was no testimony showing that the funds used to post White's bonds came from a source that could be properly considered by the court.

Based on White's application for appointed counsel, the trial court found that White was "not totally honest and open about what assets [he] had and what income [he] had" and concluded that White was not a credible person. The trial court is not completely free to disbelieve the defendant's assertions concerning his financial status, but it may disbelieve the defendant's assertions "if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate." *Whitehead*, 130 S .W.3d at 876.

6

Contrary to the trial court's finding, the income reflected in White's application for appointment of counsel was consistent with his testimony at trial. The application also stated that White owned no automobiles or other valuable property. White testified that he did not own the vehicles in his possession "free and clear." No testimony suggested that White would recoup any funds from the sale of the vehicles. White further testified that the horses in his possession were not valuable. If the defendant's "financial allegations may always be disbelieved, and the defendant must prove his indigence, then effective review of a trial court's indigence determination would be stymied, and there would be an increased risk that truly indigent defendants would be deprived of counsel." *Id.* at 875. "The idea that a defendant can make a *prima facie* showing suggests that a trial court should accept the defendant's evidence absent some reason in the record for not doing so." *Id.* We find in the record no basis for disbelieving White's financial assertions.

Moreover, in addition to the factors considered by the trial court in this case, the Lamar County Indigence Determination Standards required the trial court to consider the anticipated complexity of the defense and the estimated costs of obtaining competent private legal representation for the matter charged. LAMAR DISTRICT COURT & COUNTY COURT PLAN, Indigence Determination Standards, adopted October 8, 2010, *available at* http://tidc.tamu.edu/IDPlan/ViewPlan.aspx?PlanID=94. The record does not reflect consideration of these factors. Therefore, based on the record before us, we find that the evidence was insufficient to support a determination that White was financially able to employy

7

counsel. Accordingly, it was error to find White was not indigent for purposes of the appointment of appellate counsel.

"If a party establishes indigence, the trial court clerk and the court reporter must prepare the appellate record without prepayment." TEX. R. APP. P. 20.1(k). The trial court found that White wished to have a free reporter's record. Thus, we determine whether White is entitled to a free record. An indigent criminal defendant has a constitutional right to a free appellate record in a first appeal of right. *See Skidmore v. Texas*, 808 S.W.2d 708, 709 (Tex. App.—Texarkana 1991, no pet.). "For purposes of qualifying as an indigent in order to receive a copy of the record furnished without charge, a defendant must be unable to 'pay or give security for the appellate record.'" *McFatridge*, 309 S.W.3d at 5 (quoting TEX. R. APP. P. 20.2). The court reporter estimated that it would cost $1,125.00 to obtain the reporter's record. The clerk's record was estimated to cost an additional $400.00. Here, based on the same evidence, we conclude that the record was insufficient to show that White could afford this up-front payment. We find that White was entitled to a free appellate record.

The Lamar County Clerk is ordered to file a complete clerk's record in this matter, without the advance payment of costs, within thirty days of the date of this order. *See* TEX. R. APP. P. 34.5(a). The official court reporter, Mary Ann Taylor, is likewise ordered to prepare and file the complete reporter's record in the underlying appeal within thirty days of the date of this order. *See* TEX. R. APP. P. 34.6. Appellant's brief in this appeal will be due thirty days after the complete record has been filed. *See* TEX. R. APP. P. 38.6(a).

Josh R. Morriss, III
Chief Justice

DISSENT

The factual circumstances surrounding the trial court's determination that Michael Earitt White was not indigent are undisputed. There just seems to be information contained within those facts that interferes with a determination by this Court that the trial court erred in failing to find White to be indigent.

We should closely examine the facts upon which the trial court relied in making its determination. It appears that there are at least two areas of White's financial outgo which contribute to his apparently woeful financial condition that seem to be discretionary on his part—horses and automobiles. The majority does not correctly attribute obligations of proof to the State that I believe should have been borne by White.

The majority correctly points out the two-step process set out in *McFatridge v. State*, 309 S.W.3d 1, 5 (Tex. Crim. App. 2010). That is, the person claiming to be indigent must first prove up a prima facie case of indigency. After that prima facie obligation is met, if the State contests that plea, its duty is to rebut.

White testified that he had six horses of dubious value which cost him some $480.00 per month to feed and house. There was no evidence given to contradict White's claim that the value of the horses was, at the time of the hearing, "[N]othing. Horses are cheap now." It is not the current value of the horses that is the problem here. Rather, it is White's decision to maintain the pasturage and feeding of six horses at a price $120.00 per week (an average of about $480.00

9

per month) that is one of the problems in his attempt to prove that he is indigent. Although there is no evidence to rebut White's claim that the value of the horses was very low, there is also no evidence that White could not have opted to sell them at a very low price (or even give them away) to reduce the outflow of his money by divesting himself of the obligation for their maintenance.

White also said that he owned two vehicles which were secured by loans of undisclosed amounts (for which White did not list payments on the loans as regular expenses), the provisions of which he said required him to maintain insurance on the automobiles. First, it is almost inconceivable that if there were, indeed, promissory notes that were secured by the automobiles, White would fail to mention the obligations at any time during his testimony. Second, White also testified that although his employer supplied him with a truck and fuel for it, he was forced to pay friends $60.00 per week (i.e., an average of almost $240.00 per month) for fuel. There is nothing in the record to reflect that White has made any effort to negotiate with his employer for some alternative means to provide transportation.

In other words, here are two instances of White making poor financial choices which, taken together, would free up almost $500.00 per month which White could otherwise direct toward the payment of fees for an appeal.

The majority points out that the State did not introduce evidence of the cost of appellate counsel in a case such as White's. The State would have no burden of proof at all until White proved up a prima facie case that he was indigent. The Lamar County Indigence Determination

Standards (the Standards) for determining whether an accused is indigent[5] specify that a factor to take into account is "the estimated cost of obtaining competent private legal representation for the matter(s) charged." Would it not be White's obligation as a part of his showing of a prima facie case to prove up the amount of this cost? It would seem that the burden on the State to disprove that White was indigent would arise only after that prima facie case was established by White. There is no evidence that White has made any attempt whatsoever to retain counsel other than counsel appointed by the trial court. Would it not be White's obligation (as part of his prima facie showing of indigency) that he has at least made an effort to retain counsel with his current assets?

When looking at the obligations of establishing White's prima facie evidence that he was indigent, one of the factors set out in the Standards to determine indigency is a presumption that an accused is indigent when "[t]he accused's net household income does not exceed 100% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register." White made no reference to those Standards; since they were not a part of the record, they are not evidence upon which White could rely to establish any such presumption.

The trial court had an advantage that we do not have. He was given the opportunity to observe White's testimony and weigh his credibility as he testified. He also was provided (as we have been provided) the ability to take into account any (apparently nonexistent) attempts by White to retain appellate counsel on his own and to take into account that much of White's cash

---

[5]LAMAR DISTRICT COURT & COUNTY COURT PLAN, *available at* http://tidc.tamu.edu/IDPlan/ViewPlan.aspx?PlanID=94

flow problems have their genesis in the choices that he continues to make in keeping possession of and maintaining a herd of horses and retaining vehicles that cost him more to insure than the value they are to him.

In short, I believe that White failed to prove a prima facie case that he was indigent. Having failed to meet that prima facie obligation, the State had no responsibility to rebut something that he had not yet established. I would affirm the action of the trial court in refusing to find White as indigent.

I respectfully dissent.


Bailey C. Moseley
Justice

Date:   July 28, 2014

Publish


12