ACCEPTED
06-13-00110-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/5/2015 2:25:34 PM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-13-00110-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

1/8/2015 3:01:00 PM

DEBBIE AUTREY
Clerk

_____

MICHAEL EARITT WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE COUNTY COURT AT LAW
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 60286; HONORABLE BILL HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young, County and District Attorney
Lamar County and District Attorney's Office
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO.:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . .     i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . .     iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . .     vi

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . .     vii

ISSUE PRESENTED IN REPLY . . . . . . . . . . . . . . . . . . . . .     viii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .     9

ARGUMENT AND AUTHORITIES

      **SOLE ISSUE PRESENTED IN REPLY:   VIEWED IN
      THE LIGHT MOST FAVORABLE TO THE JURY'S
      VERDICT, THE EVIDENCE WAS LEGALLY SUFFICIENT
      FOR A RATIONAL JURY TO HAVE FOUND THE
      ESSENTIAL ELEMENTS OF DRIVING WHILE
      LICENSE INVALID BEYOND A REASONABLE
      DOUBT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . .     18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . .     19

# INDEX OF AUTHORITIES

**CASES:**                                                                    **PAGE:**

*Brooks v. State*, 323 S.W.3d 893, 912, 917-918 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). . . 11

*Clayton v. State*, 652 S.W.2d 810, 812 (Tex. App.--Amarillo 1983, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Ex parte Drake*, 212 S.W.3d 822, 823-824 (Tex. App.--Austin 2006, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004), *cert. denied*, 543 U.S. 944, 125 S.Ct. 358, 160 L.Ed.2d 256 (2004) . . . . . . . . . . . . . . . . . . . . . . . 11

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--Texarkana 2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 16

*Lugo v. Tagle*, 783 S.W.2d 815, 816 (Tex. App.-- Corpus Christi 1990, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sparkman v. State*, 997 S.W.2d 660, 663, 669 (Tex. App. --Texarkana 1999, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

**CASES:**                                                    **PAGE:**

*Vanderburg v. State*, 365 S.W.3d 712, 714 (Tex.
       App.--Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . .          11

*White v. State*, 441 S.W.3d 803, 805, 808-09 (Tex.
       App.--Texarkana 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . .           9

*Wilson v. State*, 391 S.W.3d 131, 135 (Tex. App.--
       Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . .       11, 12

**STATUTES:**                                                       **PAGE:**

TEX. PENAL CODE ANN. § 2.04 (West 2014) . . . . . . . . . . . . . .     17

TEX. R. APP. P. 38.1 (I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

TEX. R. APP. P. 38.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     v, 1

TEX. REV. CIV. STAT. ANN. ART. 6687b, § 34 (1977). . . . . . .     13

TEX. TRANSP. CODE ANN. § 521.292(a) (West 2013) . . . . . . .     10, 17

TEX. TRANSP. CODE ANN. § 521.295(a)-(b) (West 2013)  . . .     10, 17

TEX. TRANSP. CODE ANN. § 521.297(a) (West 2013) . . . . . . .     10, 17

TEX. TRANSP. CODE ANN. § 521.457(West 2013)  . . . . . . . . .     13

TEX. TRANSP. CODE ANN. § 521.457(d) (West 2013)  . . . . . .     17

TEX. TRANSP. CODE ANN. § 521.457(a) (West 2013) . . . . . . .     iv, 16

TEX. TRANSP. CODE ANN. § 521.457(a) (2)  (West 2013). . . .     12

TEX. TRANSP. CODE ANN. § 708.001 - .156 (West 2006) . . . .     14

TEX. TRANSP. CODE ANN. § 708.103(West 2006) . . . . . . . . .     14

TEX. TRANSP. CODE ANN. § 708.152 (West 2006) . . . . . . . . .     14

## STATEMENT OF THE CASE

This is a criminal appeal from the trial court's final judgment and sentence (CR, pgs. 51-52) for the misdemeanor offense of driving with an invalid/suspended license with a prior conviction. *See* Tex. Transp. Code Ann. § 521.457(a) (West 2013).

Following a traffic stop for speeding on November 6, 2012, Trooper Tim Keele arrested the appellant, White, for the offense of driving with an invalid/suspended license with a prior conviction. *See* RR, Vol. 3, pgs. 36, 42, 50. Subsequently, the State charged White by information with the misdemeanor offense of driving while license suspended. *See* CR, pg. 7.

After a one-day trial, the jury found White guilty of the offense of driving while license invalid/suspended with previous conviction, as charged in the information. *See* RR, Vol. 3, pg. 181; CR, pg. 57. The jury also assessed punishment at imprisonment in the Lamar County jail for a term of ninety (90) days and a fine in the amount of $1,000.00. *See* RR, Vol. 3, pg. 227; CR, pg. 61.

From the trial court's final judgment and sentence (CR, pgs. 51-52), White timely filed his notice of appeal. *See* CR, pg. 63. By this appeal, White raised a single issue/point of error.

## STATEMENT REGARDING ORAL ARGUMENT

The State will waive oral argument.  *See* Tex. R. App. P. 38.2.

## ISSUE(S) PRESENTED IN REPLY

**SOLE ISSUE PRESENTED IN REPLY:** **VIEWED IN THE LIGHT MOST FAVORABLE TO THE JURY'S VERDICT, THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO HAVE FOUND THE ESSENTIAL ELEMENTS OF DRIVING WHILE LIGENSE INVALID BEYOND A REASONABLE DOUBT.**

CAUSE NO. 06-13-00110-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

MICHAEL EARITT WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE COUNTY COURT AT LAW
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 60286; HONORABLE BILL HARRIS, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE 6TH COURT OF APPEALS AT TEXARKANA:

COMES NOW, the State of Texas, by and through the elected County and District Attorney of Lamar County, Gary D. Young, and the Lamar County and District Attorney's Office, respectfully submits its Appellee's (State's) Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Michael Earitt White will be referred to as "the appellant" or "White" and the State of Texas as "the State."

-1-

## STATEMENT OF FACTS

### Traffic Stop for Speeding.

On November 6, 2012, Tim Keele, a trooper for the Texas Highway Patrol for "a little over seven years," (Trooper Keele) pulled White over for speeding. *See* RR, Vol. 3, pgs. 22-23. Trooper Keele was on a previous traffic stop (RR, Vol. 3, pgs. 24, 39) and was sitting on the side of the road on FM 1497, inside the Loop. *See* RR, Vol. 3, pg. 24. *See also* State's Exhibit 4 (DVD video of the traffic stops). Trooper Keele observed a vehicle in his rear view mirror (RR, Vol. 3, pgs. 24, 40) that was speeding over the speed limit of 40 there. *See* RR, Vol. 3, pg. 24. Trooper Keele activated his rear antenna, checked the vehicle's speed, and confirmed it on radar at 53 miles an hour. *See* RR, Vol. 3, pg. 24.

Trooper Keele activated the patrol car's emergency lights, and the speeding vehicle pulled over. *See* RR, Vol. 3, pg. 25. Trooper Keele walked up to the vehicle, made contact with White, and advised him what he was being stopped for. *See* RR, Vol. 3, pg. 25. This incident "did happen" in Lamar County, State of Texas. *See* RR, Vol. 3, pg. 42.

### White's Driver's License.

Trooper Keele asked him for his driver's license and his insurance.

-2-

*See* RR, Vol. 3, pg. 25. White "wasn't being very pleasant." *See* RR, Vol. 3, pg. 25. Trooper Keele asked him to step out and come to the back. *See* RR, Vol. 3, pg. 25. White did comply with that. *See* RR, Vol. 3, pg. 25. White gave his license to Trooper Keele. *See* RR, Vol. 3, pg. 26.

Trooper Keele advised White that he was "going to go check the status of his driver's license and that [he] would be right back with him and to please stand where [he'd] asked him to." *See* RR, Vol. 3, pg. 26. Later, Trooper Keele had to call out to White not to move, but he did anyway. *See* RR, Vol. 3, pg. 26. White went to get a soda out of his truck. *See* RR, Vol. 3, pg. 26. Trooper Keele advised White to stand back where he'd asked him to and not go back to his vehicle. *See* RR, Vol. 3, pg. 27.

Trooper Keele went back to his car to look up his driver's license on an in-car computer, like a mobile dispatch system, and found it to be suspended. *See* RR, Vol. 3, pgs. 27, 30, 41. Trooper Keele entered the driver license number and the license plate number of the vehicle. *See* RR, Vol. 3, pg. 41. Trooper Keele had a license plate return and his driver license return. *See* RR, Vol. 3, pg. 28; State's Exhibit 3. The license plate return was "for local warrants, just Class C stuff here in Lamar County." *See* RR, Vol. 3, pg. 41. White had no local warrants out of Lamar County.

*See* RR, Vol. 3, pg. 41.

The return showed an "SR suspension." *See* RR, Vol. 3, pg. 31. "That's for state responsibility for a no-insurance citation." *See* RR, Vol. 3, pg. 31. Trooper Keele looked at the date on that, and it was "10/29 of '12" with "no lift date." *See* RR, Vol. 3, pg. 31. Trooper Keele stopped White on "11/6 of '12." *See* RR, Vol. 3, pgs. 31, 34.

Trooper Keele continued looking, and there was a mandatory suspension for driving while license invalid for a previous Class C citation. *See* RR, Vol. 3, pg. 32. It had a begin date of "10/29 of '12" and the end date of 3/3 of 2013. *See* RR, Vol. 3, pg. 32. White's license was suspended twice with two different dates. *See* RR, Vol. 3, pgs. 32, 46.

After that, Trooper Keele walked up to White and advised him of the violation. *See* RR, Vol. 3, pg. 36. Trooper Keele placed White under arrest, placed him into handcuffs, searched his person and put him in the front passenger seat of the patrol car. *See* RR, Vol. 3, pg. 36. Trooper Keele explained to White that "he was being arrested because a prior DWLI[1] suspended him." *See* RR, Vol. 3, pg. 42. *See also* RR, Vol. 3, pg. 50. On

---

[1] During the trial on June 6, 2013, Trooper Keele explained that the terms "driving while license invalid" (or DWLI) and "driving while license suspended" were relatively the same terms. *See* RR, Vol. 3, pg. 48. He further explained that the driving while license suspended was usually for insurance, for state responsibility. *See* RR, Vol. 3, pg. 48.

the following Monday, Trooper Keele "re-ran" his driver's license to find out what the history was. *See* RR, Vol. 3, pg. 56.

**Information and Jury Trial.**

On December 31, 2012, the State charged White by information with the misdemeanor offense of driving while license suspended. *See* CR, pg. 7. The information, which included an enhancement paragraph, alleged in pertinent part that:

> ONE **MICHAEL EARITT WHITE,** late of said County and State, anterior to the presentment of this information, did then and there intentionally or knowingly operate a motor vehicle on a highway during a period that the defendant's driver's license was suspended or revoked under Chapter 521, Transportation Code.

*See* CR, pg. 7.

On June 6, 2013, the trial court called cause number 60286 and questioned the State as to "any housekeeping matters" before swearing in the jury. *See* RR, Vol. 3, pg. 6. The State asked the trial court to swear in two officers and to invoke the Rule. *See* RR, Vol. 3, pg. 6. The trial court invoked the Rule and instructed the officers, Tim Keele and Jamie Blunt. *See* RR, Vol. 3, pgs 6-7. The trial court also conditionally admitted State's Exhibits 1 and 2. *See* RR, Vol. 3, pg. 10; State's Exhibits 1 and 2. The trial court then granted White's motion in limine regarding any other criminal

-5-

acts of misconduct or any other criminal convictions.  *See* RR, Vol. 3, pg. 11.

After the trial court gave its instructions to the jury, the State presented the charging instrument.  *See* RR, Vol. 3, pgs. 18-20.  White entered a plea of "not guilty."  *See* RR, Vol. 3, pg. 20.  *See also* CR, pg. 53.

Following opening statements (RR, Vol. 3, pgs. 20-22), the State called Trooper Keele as its only witness.  *See* RR, Vol. 3, pg. 22.  *See also* CR, pg. 37 (State's List of Witnesses).  After his testimony, the State rested. *See* RR, Vol. 3, pg. 60.

The trial court excused the jury for "some procedural matters" since White had filed a motion for an instructed verdict.  *See* CR, pg. 65; RR, Vol. 3, pg. 61.  While the jury remained in the jury room, the trial court heard arguments from the State and opposing counsel.  *See* RR, Vol. 3, pgs. 61-76. Afterwards, the trial court overruled the motion for directed verdict.  *See* RR, Vol. 3, pg. 76 ("All we're talking about are fact issues.").  The trial court signed an order denying the motion.  *See* CR, pg. 66.

Subsequently, the defense presented two (2) witnesses, including White, who testified.  *See* RR, Vol. 3, pgs. 99-140.  The State called Judge Gene Hobbs, who testified as a rebuttal witness.  *See* RR, Vol. 3, pgs. 140-

155.  Both sides then rested and closed.  *See* RR, Vol. 3, pg. 155.

Following the preparation of the court's charge (CR, pgs. 53-56), the trial court read the charge to the jury.  *See* RR, Vol. 3, pgs. 157-165.  After closing arguments, (RR, Vol. 3, pgs. 165-179), the jury retired for its deliberations.  *See* RR, Vol. 3, pg. 179.  Following its deliberations, the jury found White guilty of the offense of driving while license invalid/suspended with previous conviction, as charged in the information.  *See* RR, Vol. 3, pg. 181; CR, pg. 57.

**Punishment Phase.**

At the beginning of the punishment phase, both parties waived opening arguments.  *See* RR, Vol. 3, pg. 189.  The trial court admitted several exhibits.  *See* RR, Vol. 3, pgs. 191-193; State's Exhibits 8-12.  The State then rested.  *See* RR, Vol. 3, pg. 193.  The defense called White as a witness during the punishment phase.  *See* RR, Vol. 3, pg. 194-207.  Both sides then rested and closed.  *See* RR, Vol. 3, pgs. 207-208.

Upon the conclusion of the punishment phase, the trial court read its punishment charge to the jury.  *See* RR, Vol. 3, pgs. 209-215.  After closing arguments (RR, Vol. 3, pgs. 215-224), the jury retired for its deliberations. *See* RR, Vol. 3, pg. 225.  Following its deliberations, the jury returned a

verdict. *See* RR, Vol. 3, pg. 227. By its verdict, the jury assessed his punishment at imprisonment in the Lamar County jail for a term of ninety (90) days and a fine in the amount of $1,000.00. *See* RR, Vol. 3, pg. 227; CR, pg. 61. The trial court then pronounced sentence. *See* RR, Vol. 3, pg. 229.

On June 6, 2013, the trial court signed its judgment and sentence. *See* CR, pgs. 51-52. On the same day, White filed his notice of appeal. *See* CR, pg. 63.

**Proceedings in this Court.**

On June 20, 2013, White filed his notice of appeal in this Court. Over the period of several months, "no record ha[d] yet been filed." *See* CR, pg. 100. This Court issued an abatement order on December 12, 2013. *See* CR, pg. 102.

Subsequently, "the trial court held indigency hearing to determine whether White was entitled to a free record and an appointed lawyer on appeal." *See* CR, pg. 88. The trial court ruled that White was not indigent and was, thus, not entitled to have (1) court-appointed counsel to represent him or (2) a free record provided on appeal. *See* CR, pg. 88. On July 28, 2014, this Court concluded, with Chief Justice Morriss writing for the

-8-

majority, that "it was error to deny White a free record and an appointed attorney on appeal." *See White v. State*, 441 S.W.3d 803, 805 (Tex. App.--Texarkana 2014, no pet.). Justice Moseley dissented. *See id*. at 808-09.

On or about August 18, 2014, the County Clerk of Lamar County filed the Clerk's Record. On September 4, 2014, this Court ordered the official court reporter to file the Reporter's Record on or before September 19, 2014. On September 11th, the official court reporter filed the Reporter's Record with the exhibits being filed on September 17, 2014.

White sought an extension of time to file his brief, which this Court granted. White filed his brief on or about November 14, 2014.

On or about December 16th, the State also sought an extension of time to file its brief, which this Court granted until January 5, 2015. The State will be filing its brief at that time.

## SUMMARY OF THE ARGUMENT

By a single issue/point of error, the appellant, White, challenged the legal sufficiency of the evidence underlying his conviction. Viewed in the light most favorable to the jury's verdict, the evidence was legally sufficient for a rational jury to have found the essential elements of driving while license invalid beyond a reasonable doubt. Therefore, the trial court's

judgment and sentence should be affirmed.

## ARGUMENT AND AUTHORITIES

**SOLE ISSUE PRESENTED IN REPLY:**   **VIEWED IN THE LIGHT MOST FAVORABLE TO THE JURY'S VERDICT, THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO HAVE FOUND THE ESSENTIAL ELEMENTS OF DRIVING WHILE LIGENSE INVALID BEYOND A REASONABLE DOUBT.**

A. **Introduction.**

With his single issue, White alleged that the evidence was insufficient to support the appellant's conviction because there was no evidence to show that the appellant had a lawful license suspension while he was driving on November 6, 2012. *See* Appellant's Brief, pg. 10.  In support thereof, White contended that his suspension period could not have lawfully begun until well after he was stopped on November 6, 2012.  *See* Appellant's Brief, pg. 12 (citing Tex. Transp. Code Ann. § 521.292(a), § 521.295(a)-(b), § 521.297(a) (West 2013)).

B. **Preservation of Error.**

To support his position that the suspension period could not have lawfully begun, White contended that "[t]he date of this notice [of suspension] controls the effective date of the suspension."  *See* Appellant's Brief, pg. 12 (citing defense exhibit 1).  In his brief, however, White did not

provide any authority in support of this contention; it was inadequately briefed.  *See* Tex. R. App. P. 38.1(i); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004), *cert. denied*, 543 U.S. 944, 125 S.Ct. 358, 160 L.Ed.2d 256 (2004).  Further, this argument did not comport to the argument made in the trial court.  Accordingly, White waived this argument on appeal.

C.    **Standard of Appellate Review:  Legal Sufficiency.**

In evaluating legal sufficiency, this Court reviews all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.  *See*, *e.g.*, *Vanderburg v. State*, 365 S.W.3d 712, 714 (Tex. App.--Texarkana 2012, no pet.) (Justice Carter) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  A rigorous legal sufficiency review focuses on the quality of the evidence presented.  *See* *Wilson v. State*, 391 S.W.3d 131, 135 (Tex. App.--Texarkana 2012, no pet.) (citing *Brooks*, 323 S.W.3d at 917-18 (Cochran, J., concurring)).  This Court examines legal sufficiency under the direction of the *Brooks* opinion, while

giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *See Wilson*, 391 S.W.3d at 135 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *See Wilson*, 391 S.W.3d at 135 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *See Wilson*, 391 S.W.3d at 135.

D.    **The Law:  Driving While License Invalid.**

Section 521.457(a) of the Texas Transportation Code Annotated provided in pertinent part that "[a] person commits an offense if the person operates a motor vehicle on a highway:

> (2)  during a period that the person's driver's license or privilege is suspended or revoked under any law of this state;

*See* Tex. Transp. Code Ann. § 521.457(a)(2) (West 2013).

Examination of the statute in question reveals these required elements:

(1) A person;

(2) whose license or driving privilege has been cancelled, suspended or revoked;

(3) drives any motor vehicle upon the highways of this State while such license or driving privilege is cancelled, suspended or revoked.

*See Clayton v. State*, 652 S.W.2d 810, 812 (Tex. App.--Amarillo 1983, no pet.) (interpreting Tex. Rev. Civ. Stat. Ann. art. 6687b, § 34 (1977), the predecessor statute to Tex. Transp. Code Ann. § 521.457 (West 2013)).

In *Sparkman v. State*, 997 S.W.2d 660 (Tex. App.--Texarkana 1999, no pet.), the driver appealed his conviction for operating a motor vehicle with a suspended license and this Court affirmed. *See id.* at 663. In *Sparkman*, this Court held that as an element of the offense of driving with a suspended license, the State was required to prove the appellant's driver's license was suspended. *See id.* at 669. In *Sparkman*, the State did so by introducing evidence that the Department of Public Safety automatically suspended his driver's license after the 1995 conviction based on his prior 1982 conviction. *See id.*

Where a statute provides for suspension of a driver's license upon conviction of a certain offense, the statute is self-operative, and the license is

automatically suspended upon a final conviction. *See Lugo v. Tagle*, 783 S.W.2d 815, 816 (Tex. App.--Corpus Christi 1990, no pet.). The suspension is not within the discretion of a court or jury. *See id.*

In *Ex parte Drake*, 212 S.W.3d 822 (Tex. App.--Austin 2006, pet. ref'd), the court of appeals explained that:

> The driver responsibility program was enacted by the legislature in 2003. Act of June 2, 2003, 78th Leg., R.S., ch. 1325, § 10.01, 2003 Tex. Gen. Laws 4884, 4942 (codified at Tex. Transp. Code Ann. §§ 708.001-.156 (West Supp. 2006)). Under the program, the Texas Department of Public Safety assesses an annual surcharge on the driver's licenses of persons convicted of certain driving-related offenses during the preceding thirty-six month period. Tex. Transp. Code Ann. §§ 708.053-.054, 708.102-.104 (West Supp. 2006). The amount of the surcharge varies depending on the offense; the surcharge for driving without financial responsibility is $250 per year. *Id.* § 708.103. Failure to pay the surcharge results in the automatic suspension of the driver's license until the surcharge is paid. *Id.* § 708.152. . . .

*See Ex parte Drake*, 212 S.W.3d at 823-24.

E.  **Application of Law:  Legally Sufficient Evidence Supported White's Conviction.**

Here, as in *Sparkman*, the State was required to prove as one of the elements that White's driver's license was suspended, and the State did so through the testimony of Trooper Keele:

> So, anyway, I went down and looked at the next one. It's a SR suspension. That's for state responsibility for a no-

-14-

insurance citation. So, anyway, I looked at the date on that. It's 10/29 of '12. I stopped Mr. White on 11/6 of '12. So, that would be the one that comes into play, or the first one. And so, anyway, I look at it, and it's 12/31/9999. That's the end date on it, which there's no lift date.

*See* RR, Vol. 3, pg. 31. *See also* State's Exhibit 3.

State's Exhibit 3 was consistent with Trooper Keele's testimony because the last page of State's Exhibit 3 confirmed that:

ENFORC ACTN: SR SUSPENSION - MANDATORY CONVICTION
STATUS: ACTIVE BEGIN DT: 10292012 END DT: 12319999 LIFT DT: STATE: TX

*See* State's Exhibit 3. *See also Drake*, 212 S.W.3d at 824 (failure to pay the surcharge results in the automatic suspension of the driver's license); *Lugo*, 783 S.W.2d at 816 (the statute is self-operative, and the license is automatically suspended upon a final conviction).

In addition to the holdings in *Drake* and *Lugo*, Trooper Keele explained through his training that the suspension was automatic by the following testimony:

Q. And do you know how the suspension system works?

A. Yes.

Q. And how do you know that?

A. Through my training.

-15-

Q. And you state that individuals automatically receive a suspension, correct?

A. Yes, ma'am, upon their conviction date.

*See* RR, Vol. 3, pg. 42.

As set forth above, the testimony of Trooper Keele and State's Exhibit 3 established the element that White's driver's license was automatically suspended for an "SR suspension" and mandatory conviction on October 29, 2012. *See* RR, Vol. 3, pgs. 31, 42; *Drake*, 212 S.W.3d at 824; *Lugo*, 783 S.W.2d at 816. Therefore, the evidence was sufficient to prove the element that White's driver's license was suspended. *See Sparkman*, 997 S.W.2d at 669. The evidence was also sufficient to satisfy the remaining two (2) elements, *see Clayton*, 652 S.W.2d at 812, that White's driver's license was suspended on November 6, 2012 when Trooper Keele initiated a traffic stop on the speeding motor vehicle driven by White, a person, upon FM 1497 in Lamar County, Texas. *See* RR, Vol. 3, pgs. 24, 36, 42; State's Exhibit 4. Viewed in the light most favorable to the jury's verdict, the State's evidence was legally sufficient for a rational Lamar County jury to have found the essential elements of driving while license invalid beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 912; *Jackson*, 443 U.S. at 319; Tex. Transp. Code Ann. § 521.457(a) (West 2013).

Finally, it was incumbent upon White to prove that his suspension period could not have lawfully begun under Tex. Transp. Code Ann. § 521.292(a), § 521.295(a)-(b), § 521.297(a) (West 2013) by requesting an issue in the jury charge and to prove such an affirmative defense by a preponderance of the evidence. *See* Tex. Penal Code Ann. § 2.04 (West Supp. 2014); § 521.457(d) (West 2013). Because White failed to do so, the appellant's argument on appeal should fail. Accordingly, the trial court's final judgment and sentence should be affirmed.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, the State of Texas prays that upon final submission of the above-styled and numbered cause without oral argument, this Court affirm the trial court's final judgment; adjudge court costs against the appellant; and for such other and further relief, both at

law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
Gary D. Young, County Attorney
SBN# 00785298
gyoung@co.lamar.tx.us

## ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 4586 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

-18-

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 5th day of January, 2015 upon the following:

Don Biard
McLaughlin Hutchison & Biard LLP
38 First Northwest
Paris, TX   75460

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

-19-